## MARY A. NEWKIRK v. JOHN W. MARSHALL, *et al.*

1. OCCUPATION UNDER DEVISE; *Ejectment, Not Maintained.* Where a husband, with his wife and daughter, settles upon and occupies a quarter-section of government land under the homestead laws of the United States, and makes the proper entry for that purpose, and while so occupying the same, and just before his death, and about five years after such settlement, he executes a will, giving his personal property to his wife; and giving the west half of the quarter-section to his wife and the east half to his daughter, and, also, in his will appoints his wife as executrix of his last will and testament, and guardian for his daughter, who is a minor, and soon thereafter dies, and immediately after his death his wife has the will probated and is appointed executrix under it, and receives the personal property under the will, and orally gives the east half of the real estate to the daughter, and promises to make a deed therefor, and she also makes final proof with regard to the homestead settlement, occupancy, etc., and the patent is afterward issued to her; and while these things are transpiring the daughter marries, and she and her husband, in pursuance of the parol agreements and understandings with the widow, who is the step-mother of the daughter, that the daughter shall have the east half of said land, take possession of such east half, make valuable improvements thereon, and occupy the same as their homestead for about two years, when the husband dies; and afterward the daughter goes to Kentucky, where she remains for about ten years, and while there the land is in charge of the step-mother, but the step-mother at all times recognizes the daughter's ownership thereof, and while there both the daughter and the step-mother are again married, and the daughter with her husband returns to the land, and the step-mother still recognizing the daughter's ownership thereof and still promising to make a deed to the daughter therefor, the daughter and her husband take possession of the land and make further improvements thereon, and the parties then quarrel, and the step-mother then forbids their going upon the land, but they do go upon the land and occupy the same as their homestead; and there is no evidence as to whether the step-mother's husband ever expressed any consent or not that the land should belong to or be occupied by the daughter and her husband; and afterward the step-mother commences this action in the nature of ejectment, to recover the property from the daughter and her husband: *Held,* That the action cannot be maintained.

2. HOMESTEAD LAWS; *Vested Rights.* Under the United States homestead laws and by a compliance therewith, a vested right is obtained

in the homestead at the expiration of five years from the entry thereof.

3. ——— *Patent, When.* When proper proof of settlement, occupancy, etc., is made in such a case, the person to whom the patent should be issued is entitled to the patent immediately, and may then contract with reference to the land the same as though the patent had already and in fact been issued.

4. STATUTE OF FRAUDS; *Consideration.* In this case, the taking of the possession of the land by the daughter and her first husband under the parol agreements between them and the step-mother, and the making of lasting and valuable improvements thereon, took the case out of the statute of frauds and also supplied a sufficient consideration for the property, and the acts of the parties since that time have enhanced and made stronger the daughter's equities in and to the land.

5. ——— Under the facts of this case, the daughter is in equity entitled to the land.

*Error from Chase District Court.*

EJECTMENT, brought by *Newkirk* against *Marshall* and wife. Trial at the July Term, 1884, and judgment for defendants. The plaintiff brings the case to this court. The opinion states the facts.

*Madden Brothers,* and *F. P. Cochran,* for plaintiff in error.

*Kellogg & Sedgwick,* for defendants in error.

The opinion of the court was delivered by

VALENTINE, J.: This was an action in the nature of ejectment, brought by Mary A. Newkirk against John W. Marshall and Mary E. Marshall, in the district court of Chase county, for the recovery of certain land situated in that county. The case was tried before the court and a jury, and the jury rendered a general verdict in favor of the defendants and against the plaintiff, and also made special findings of fact; and upon this general verdict and these special findings, the court below rendered judgment in favor of the defendants and against the plaintiff. The plaintiff brings the case to this court for review.

The facts of the case appear to be substantially as follows: In the year 1861 the northwest quarter of section 8, in township 22, of range 8 east, in Chase county, was government land. Sometime during that year Augustus M. Landsbury, with his wife Mary A. Landsbury, and his daughter Mary E. Landsbury, who was then a girl of about 9 or 10 years of age, settled upon and occupied this quarter-section of land as their homestead. Landsbury also made an entry for the land under the homestead laws of the United States, but just when he made it, is not shown. On November 27, 1866, Landsbury executed a will, giving to his wife, Mary A. Landsbury, all his personal property and the east half of said land, and to his daughter, Mary E. Landsbury, the other half of the land, and appointed his wife executrix of his last will and testament, and guardian for his said minor daughter. Soon afterward, and sometime in the year 1866, Landsbury died. On January 7, 1867, Mrs. Landsbury caused the will to be probated in the probate court of Chase county, and she was also appointed executrix under the will; and there was also evidence tending to show that she was appointed guardian for her step-daughter, the said Mary E. Landsbury. At the July term of the probate court of Chase county, Mrs. Landsbury made a report, showing that she had paid the debts of the estate and had a balance remaining in her hands belonging to the estate of $718, and further showing as follows: "Said balance is in the hands of said Mary Ann Landsbury, as the lawful owner by law of said property, except the one-half of homestead she now lives on, which belongs to Mary Eliza Landsbury, the daughter of deceased." Some time after Landsbury's death, but just when is not shown, Mrs. Landsbury, as his widow, made final proof, under the United States homestead laws, of the settlement and occupancy of the aforesaid land, and also of Landsbury's death, and that she was his widow. Mary E. Landsbury continued to reside with Mrs. Landsbury on the east half of said land, and during all that time it was understood and agreed between them that Mary E. Landsbury owned the west half thereof, and that

Mrs. Landsbury should at some time execute a deed to her for the same. Sometime in the year 1869, or 1870, Mary E. Landsbury was married to William Wagoner. On May 2, 1870, the patent for the entire quarter-section was issued by the United States, conveying the title to Mrs. Landsbury. At that time all the improvements were on the east half thereof. Some time after the marriage of Mary E. Landsbury to William Wagoner, they, in accordance with the understanding and agreement of all the parties that the west half of said quarter-section belonged to Mrs. Wagoner, and under the promise of Mrs. Landsbury that she would execute a deed therefor to Mrs. Wagoner, Mrs. Wagoner and her husband took possession of the land, made permanent improvements thereon, and occupied the same as their residence and homestead for about two years, when Wagoner died. The improvements made on the land by them during their occupancy were worth about $75. Soon after Wagoner's death Mrs. Wagoner removed to the state of Kentucky, and resided there for about ten years. During all the time that Mrs. Wagoner remained in Kentucky Mrs. Landsbury had charge of this land as well as of the east half of the quarter-section, leasing the same, receiving the rents and profits thereof, and paying the taxes thereon, and, for a part of the time, occupying the same herself, but all the time recognizing Mrs. Wagoner as the owner thereof — that is, as the owner of the west half of the quarter-section. Also, while Mrs. Wagoner was in Kentucky, both she and Mrs. Landsbury were married. Mrs. Waggoner was married to John W. Marshall, and Mrs. Landsbury to a man by the name of Newkirk. In February, 1881, Mrs. Marshall returned from Kentucky to Kansas, her husband, John W. Marshall, having preceded her some three or four weeks. For some time afterward they resided with Mrs. Newkirk on the east half of said quarter-section, and during nearly all this time Mrs. Newkirk still recognized Mrs. Marshall as the owner of the west half of the quarter-section, and accordingly permitted Marshall to make improvements thereon as though the land was his wife's; but finally Mrs. Newkirk and Marshall quar-

reled, and then she told Marshall that they should not have the land unless they got it by law, and forbade his moving upon the land. Shortly afterward, however, he, with his wife, did move upon the land, and they have continuously occupied the same as their homestead and residence ever since, and have continued to make improvements thereon. The improvements made upon the land by them after they took possession thereof, and before and after they occupied the same as their homestead, are worth about $368. Whether Newkirk ever expressed any assent or dissent with respect to the Marshalls' claim to the land, is not shown. The land, however, at the time the Marshalls took possession thereof, was in the actual possession of a tenant of Mrs. Newkirk, which tenant also resided thereon. Soon after the quarrel between Marshall and Mrs. Newkirk, Mrs. Marshall demanded a deed for the land from Mrs. Newkirk, but she refused, and some time afterward, to wit, on April 2, 1883, Mrs. Newkirk commenced this action against the Marshalls to recover the land from them. Mrs. Newkirk always up to the time of the said quarrel recognized Mrs. Marshall as the actual and present owner of the land in controversy, with an actual and present right to the possession thereof, and always agreed that she would execute a deed for the land to Mrs. Marshall, although no particular time was ever fixed for the execution of such deed.

Under the foregoing facts, has Mrs. Newkirk a right to recover the land in controversy? The court below held that she has not, but Mrs. Newkirk claims that she has such right, and claims that the court below erred, and founds this claim principally upon the ground that no consideration for the land ever passed from Mrs. Marshall to herself. Was such a consideration necessary, under the circumstances? It must be remembered that Mrs. Newkirk herself never paid any consideration for the land. She procured the title thereto merely by virtue of being the widow of Augustus M. Landsbury, who settled upon it and occupied it with his family under the homestead laws of the United States, and his right did not depend upon her any more than it depended upon his daughter

6 — 35 KAS.

Mrs. Marshall. If he had lived he could have procured the title thereto by occupying it with his daughter alone, just as well as he could have done by occupying it with his wife alone. A homestead can be entered under the homestead laws of the United States only by the "head of a family," (U. S. Rev. St., § 2, 289,) which shows that the homestead entry is for the benefit of the whole family, and not for any single individual. The homestead under such laws is virtually a gift or donation by the general government to the family; and hence, when the title to such homestead is taken in the name of any single member of the family, there should not be much consideration required to vest the title to a fair proportion thereof in another member of the family. Landsbury in the present case entered and occupied his homestead for the benefit of himself and his wife, the present Mrs. Newkirk, and his daughter, the present Mrs. Marshall, and when he died it seems only fair and just that the homestead should be equally divided between the survivors. This was thought to be just by all the parties, and Landsbury so expressed it in his will; and after providing in his will for the division of his homestead equally between his wife and daughter, he then gave all his personal property to his wife, which, in all probability, he would not have done if he had not expected the real estate to be equally divided between them. And his widow and daughter constituted a family till long after the patent was issued. Under such circumstances, should there be much consideration required to pass from the daughter to the widow in order that such equitable division of the real property should be made? But it is not always necessary in cases of the equitable transfer of title to land that a consideration should pass from the person obtaining the land to the person from whom the land is obtained. Mr. Pomeroy, in his work on the Specific Performance of Contracts, § 130, uses the following language with respect to gifts or donations of real estate:

". . . The statute of frauds is satisfied by possession as a part performance, and the general doctrines of equity demand, in addition thereto, a valuable consideration. This latter de-

mand is answered by the outlays, expenditures and labors of the donee in making the valuable improvements as a consequence of the gift. The doctrine, therefore, has been generally accepted that, when the donee takes possession and makes outlays upon valuable and substantial improvements, in execution of the donation, or does other analogous acts, which would render a revocation or a refusal to complete inequitable, a parol gift of land will be specifically enforced, since the labor and expenditures of the donee supply a valuable consideration, while the possession and betterments constitute a part performance which obviates the statute of frauds. This doctrine has been criticised in some American decisions, and wholly repudiated by others."

Mr. Pomeroy cites a large number of authorities supporting the proposition which he enunciates. (See also *Galbraith v. Galbraith*, 5 Kas. 402; *Twiss v. George*, 33 Mich. 253.)

Under the facts of this case, we do not think that the plaintiff can maintain her action. Under the United States

1. Occupation under devise; ejectment, not maintained.

homestead laws, and by a compliance with them, a person entering a homestead, or in case of his death, his widow, or in case of the death of both, his heirs or devisee, obtains a vested right in the homestead at the expiration of five years from the entry thereof, and upon

2. Homestead; vested right obtained.

making proper proof is entitled to a patent for the land from the United States. And as soon as a person is entitled to a patent, although it may not yet have been issued, and may not be issued for years, he or she

3. Right to patent, when.

may contract and be contracted with concerning the land, or sell it or convey the same precisely the same as though the patent had already been issued. Equity, in order to do justice and to protect the rights of parties and to prevent frauds, will generally consider that as having been done which ought to be done. And in order to protect the rights of all parties, where a patent is due but has not yet been issued, equity will consider such rights precisely the same as though the patent had in fact been issued on the very first day on which it ought to have been issued.

We might further say, that in this case the burden of proof rested upon the plaintiff, and as the jury found a general verdict in favor of the defendants and against the plaintiff, everything will be considered as having been found in the defendants' favor and against the plaintiff, except such facts as the jury specifically found otherwise by their special findings. And viewing the facts of the case in this manner, we think the taking of the possession of the land by Mrs. Marshall and her first husband under the parol agreements between them and Mrs. Newkirk, and the making of the lasting and valuable improvements on the land, not only took the case out of the statute of frauds, but also supplied a sufficient consideration for the property, and the acts of the parties since that time have enhanced and made stronger Mrs. Marshall's equities in and to the land.

4. Case taken out of statute of frauds; consideration.

The plaintiff also makes some points upon the introduction and exclusion of evidence, and the instructions given and refused; but we do not think that the court below committed any material error in these respects. Upon the entire facts of the case, taken as a whole, we think Mrs. Marshall is entitled to the land in controversy; and believing that no material error has been committed in the case, and that justice and equity have been done, the judgment of the court below will be affirmed.

5. Daughter, entitled to land.

All the Justices concurring.