MARY ELLEN CRIMMINS V. ELLEN MORRISEY, *et al.*

HOMESTEAD ; *Partition*; *Widow Estopped from Disputing Children's Title.*
Where a father and husband in 1863 enters government land under
the act of Congress, approved May 20, 1862, to secure homesteads to
actual settlers upon the public domain, and in August, 1866, dies, and
his widow marries again, and afterward makes the requisite proof of
settlement, occupancy, residence and cultivation to procure the title
to the land, and on May 10, 1870, a patent for the land is issued by
the United States to "the heirs" of the deceased father and husband,
and in 1871 the land is partitioned, with the consent of all the par-
ties, including the widow, between the widow and children under the
act of the legislature relating to descents and distributions, ( Gen.
Stat. 1868, ch. 33,) and the widow takes possession of that portion al-
lotted to her, and the children, by their guardian, take possession of
that portion allotted to them, and remain in the possession thereof for
more than twelve years, paying all the taxes and making lasting and
valuable improvements thereon, with the knowledge and consent of
the widow, *held*, that the property allotted to the children belongs to
them, without regard to whether the patent should have been issued
to "the heirs" or to the widow, and without regard to whether the par-
tition proceedings as judicial proceedings were void or valid; that
under the facts of the case the widow is estopped from disputing the
children's title.

*Error from Washington District Court.*

ACTION brought August 1, 1884, by *Mary Ellen Crimmins*
against *Ellen Morrisey* and *Michael Morrisey*, to set aside a
deed of conveyance for certain real estate situated in Wash-
ington county, executed by the plaintiff to the defendant,
Ellen Morrisey. The defendants filed separate answers and
separate amended answers, and the plaintiff replied. The
third defense set forth in the amended answer of the defend-
ant, Ellen Morrisey, reads as follows:

"3. For further answer to the petition of the plaintiff on
file herein, this defendant says: That this defendant now is,
and ever since the 10th day of May, 1870, has been the ab-
solute owner in fee simple of the north half of the south-
east quarter and the south half of the northeast quarter, all
in section 31, in township 4, of range 5 east, in Washington

county, Kansas, a part of which is described in the plaintiff's petition on file herein, for that in the year 1863 this defendant's former husband, Thomas Sheridan (now deceased), pursuant to the act of congress approved May 20, 1862, to secure homesteads to actual settlers on the public domain, having all the necessary qualifications so to do, entered as a homestead the real estate above described; that this defendant as the wife of said Sheridan continued to occupy the real estate hereinbefore described, in accordance with said act of congress, as their home, until the —— day of August, 1866, when the said Thomas Sheridan departed this life; that afterward this defendant, as the widow of said Sheridan, deceased, continued to occupy said real estate as a homestead, in accordance with the said act of congress, until on or about the 10th day of May, 1870, this defendant did, in accordance with § 2291 of said act of congress, as the widow of said Thomas Sheridan, deceased, make due proof that she as such widow of said deceased had complied with said act of congress relative to homesteading said land, and then caused to be issued a patent from the United States government to her for said land, which vested in her the fee-simple title to said real estate as the widow of said Thomas Sheridan, deceased; that she has ever since resided on said real estate, and has not in any way alienated or conveyed the same, but is now the absolute owner in fee simple thereof; and that the plaintiff never owned any interest whatever therein."

The second paragraph of the plaintiff's reply to the foregoing defense reads as follows:

"2. For further reply to said third count, plaintiff says: That it is not true, as alleged in the third count, that defendant Ellen Morrisey, as widow of Thomas Sheridan, deceased, made final proof under the homestead laws of the United States; and that there was issued to her by the government of the United States a patent vesting in her the fee-simple title to the lands described in said third count, and says: That while Ellen Morrisey, the defendant, furnished the proof required by § 2291 of the act of congress entitled 'An act to secure homesteads to actual settlers on the public domain,' approved May 20, 1862, that the patent to said land issued to and the fee-simple title to said lands vested in the heirs of Thomas Sheridan, of which plaintiff was one. A copy of said patent is hereto attached, marked 'A,' and made a part of this reply.

"Plaintiff further says, that afterward, and after final proof as aforesaid had been made, and after said patent had issued to the heirs of said Thomas Sheridan, deceased, the said defendant Ellen Morrisey, on or about the 18th day of January, 1871, consented to an allotment of said land together with certain other lands of which said Thomas Sheridan, deceased, died seized, and that said allotment was duly confirmed; that said allotment was made, the commissioners appointed, and said consent of said Ellen Morrisey given in writing, and said order of allotment was confirmed under the provisions of chapter 33 of the General Statutes of Kansas of 1868, being the law in force at the time of said allotment; that under and by virtue of said allotment and consent of Ellen Morrisey and the order confirming the same, a copy of which, marked 'B,' is hereto attached and made a part hereof, said Ellen Morrisey took possession of the premises to her allotted and by her selected and chosen, and the duly-appointed and qualified guardian of plaintiff and her sister, Catherine Julia Sheridan, took possession, control and charge of the land described in plaintiff's petition, with full knowledge, consent and approval of said Ellen Morrisey, and from that time until this plaintiff arrived at legal age in 1883, held such possession of the same with the knowledge and consent of defendant Ellen Morrisey, and during all of said time has paid for her and her said sister all taxes and assessments levied and assessed against said land, amounting to several hundreds of dollars, and all with the knowledge and consent of defendants; and also has made with their consent and knowledge lasting and valuable improvements thereon, and has expended large sums of money in looking after and caring for the same; that said taxes were paid and the costs of the improvements made and expenses for caring for and looking after said lands were discharged out of the separate and individual estate and money of plaintiff and her sister in equal parts; all of which was with the full knowledge of this defendant Ellen Morrisey, and with her approval as mother and natural guardian of plaintiff and her said sister.

"Plaintiff further says, that during all the time from the making of the allotment aforesaid until the execution and delivery of said deed set forth and described in plaintiff's petition, the said defendant has lived and resided upon the lands adjoining the premises in dispute in this action and upon the lands so allotted to and chosen by defendant, with full knowl-

29 — 36 KAS.

edge of all the facts, and has never exercised or attempted to exercise any acts of ownership or control over said lands, but during all of said time knowingly allowed and permitted the guardian of the plaintiff to expend the money aforesaid of the plaintiff in paying taxes, making improvements and charges for care of the same, without interference, and during all of said time openly and notoriously disclaimed any interest in or ownership of said lands, and during all of said time openly and notoriously declared that plaintiff and her said sister were the owners of said lands.

"Plaintiff further states, that she and her said sister, Catherine Julia Sheridan, are the sole heirs of Thomas Sheridan, deceased; that ever since the issuing of said patent and at the time of the issuing of the same, it was delivered to defendant, and she has since that time held the same in her possession with full knowledge of its contents, and accepted the same and neglected and refused to appeal from the order issuing the same, but accepted the same and made no complaint; that said patent was so issued by order and ruling of the commissioner of the general land office, and the title thereof conveyed to plaintiff and her said sister as the sole heirs of Thomas Sheridan, deceased, with the full knowledge of defendant, and from which order and ruling the said defendant failed, neglected and refused to appeal, but occupied and received the same."

Exhibits "A" and "B" show as is alleged in the foregoing reply. The patent from the United States was issued on May 10, 1870, and in fact granted the land to "the heirs of the said Thomas Sheridan, deceased;" and exhibit "B" shows that the lands were partitioned and allotted as in the reply alleged. The other facts are sufficiently stated in the opinion. Judgment for the defendants, at the April Term, 1885. The plaintiff brings the case here.

*Lowe & Smith,* and *A. S. Wilson,* for plaintiff in error.

*J. W. Rector,* and *Conwell & Wells,* for defendants in error.

The opinion of the court was delivered by

VALENTINE, J.: Mary Ellen Crimmins, the plaintiff in this action, who was formerly Mary Ellen Sheridan, alleged

in her petition in detail, but in substance as follows: She and her sister, Catherine Julia Sheridan, inherited from their father, Thomas Sheridan, deceased, certain lands in Washington county, Kansas, among which was the land now in controversy. She and her sister were then little girls; but on March 4, 1883, she arrived at the age of eighteen years, and on August 4, 1883, while still unacquainted with business and a single woman, was induced by the fraud and false representations of the defendants, Ellen Morrisey and Michael Morrisey, who were then and are now husband and wife, to execute a warranty deed to Ellen Morrisey for the plaintiff's interest in said land. Such interest was worth at the time about $1,500; but the defendants in consideration therefor gave to the plaintiff only one pony mare worth about eighty dollars, and a promissory note executed by Michael Morrisey for $150, which note was and is utterly worthless, the said Michael Morrisey being utterly insolvent; all of which consideration she has tendered back to the defendants, and desires to return the same to them; and the plaintiff prays in her petition that the aforesaid deed be set aside, and that she be restored to all that she has lost thereby.

The defendant Ellen Morrisey answered to this petition, setting forth as a third defense thereto in substance as follows: The land in controversy never belonged to either the plaintiff or Thomas Sheridan, but belonged to the defendant Ellen Morrisey. In 1863, it, along with other land, was entered by Thomas Sheridan as a homestead, under the act of congress approved May 20, 1862, to secure homesteads to actual settlers upon the public domain. In August, 1866, he died, leaving the defendant, Ellen Morrisey, then Ellen Sheridan, as his widow. Ellen Morrisey continued to occupy the land as his widow, and afterward made the requisite proof of settlement, occupancy, residence and cultivation to procure the title to the land, and on May 10, 1870, a patent for the land was issued by the United States to her, which vested in her the fee-simple title to the land; that she is still the owner

thereof, and resides upon and occupies the same; and that the plaintiff never had any interest therein.

The plaintiff replied, and in the second paragraph of her reply alleged in substance as follows: The patent for the land was not issued to Ellen Morrisey, but was issued in terms to "the heirs of said Thomas Sheridan, deceased," and she gives a copy of the patent, which not only shows that the patent was issued on May 10, 1870, by the United States for the land in controversy, to "the heirs of said Thomas Sheridan, deceased," but also shows that the said final proof was made by "*Ellen Morrisey*," not Ellen Sheridan. The plaintiff and her sister were and are the only surviving children and issue of the said Thomas Sheridan, deceased; and are also the children of Ellen Morrisey. In 1871, under the act of the legislature relating to descents and distributions, (Gen. Stat. of 1868, ch. 33,) the said land, with the consent of all the parties, including Ellen Morrisey, was divided between Ellen Morrisey and the plaintiff and her sister, and Ellen Morrisey took possession of that portion allotted to her, and the plaintiff and her sister, by their guardian, took possession of that portion allotted to them, and continued in the possession and occupancy thereof up to March 4, 1883, when the plaintiff became of age; and during all that time the plaintiff and her sister, by their guardian, paid all the taxes on the land and made lasting and valuable improvements thereon; all with the knowledge and consent of the defendants. To this paragraph of the plaintiff's reply the defendant Ellen Morrisey demurred, upon the ground that it did not state facts sufficient to constitute a cause of action, or to constitute a reply to her answer; which demurrer was by the court sustained.

The pleadings, stated again and stated very briefly, are substantially as follows: The plaintiff alleged that she owned some land by inheritance from her father, worth $1,500, and that the defendants fraudulently induced her to execute a deed of conveyance therefor to Ellen Morrisey, for a grossly insufficient consideration, and asked to have the deed set aside. Ellen Morrisey answered, alleging that the plaintiff never

owned or had any interest in the land in controversy; but that the same belonged to the defendant Ellen Morrisey, and therefore alleging inferentially that the plaintiff could not have been defrauded by the defendants in inducing her to execute a deed to that which she did not own, and which already belonged to Ellen Morrisey, and that even a pony mare worth only $80 and a worthless promissory note for $150 were ample consideration for the execution of such a deed. The plaintiff replied to this answer, attempting, by a detailed statement of all the facts of the case, to make it appear that she did own the land in question, and therefore that she was in fact defrauded by the defendants fraudulently inducing her to execute the deed.

We think the plaintiff's reply is a good reply to the defendant's answer; and if the facts stated in the plaintiff's reply are true, the plaintiff ought to recover. The only question, however, presented to this court by counsel is whether the facts set forth in the plaintiff's reply show that she really and in fact had any interest in the land in controversy. We think the facts so show; and this without reference to the question whether the patent should have been issued to Ellen Morrisey or to the heirs of Thomas Sheridan, deceased, and without reference to the further question whether the foregoing partition proceedings as judicial proceedings were void or valid. (*Newkirk v. Marshall*, 35 Kas. 77.) If the patent was rightfully issued to the heirs of Thomas Sheridan, deceased, then of course the plaintiff owned or at least had an interest in the property in controversy; and the commissioner of the general land office holds that the patent under such circumstances should be so issued. In 2 Lester's Land Laws, 265, Hon. Joseph S. Wilson, commissioner of the general land office, uses the following language:

"Where the widow of a deceased settler *marries again*, before the expiration of five years, it is held that if she continues the settlement and improvement of the claim to the expiration of the period fixed by the statute, *the fee inures to the heirs*, and final proof may be made in the name of the said heirs."

But even if the patent should not have been issued to the heirs of Thomas Sheridan, deceased, but should have been issued to Ellen Morrisey alone, still it was issued to the heirs, and it thereby conveyed to them the legal title to the land now in question; which heirs include the plaintiff as well as her sister and Mrs. Morrisey. Also, if the proceedings partitioning the land between Mrs. Morrisey and the plaintiff and her sister were legal, then again it would follow that the plaintiff owns the land in controversy, or at least an interest therein. But even if it should be held that the patent should have been issued, and if it had in fact been issued to Mrs. Morrisey alone; and even if the partition proceedings, as judicial proceedings, were entirely void, still, under the other facts of the case — the fact that the title originated *in the manner* it did, the fact that the property was partitioned *by the consent* of all the parties as it was partitioned, and the fact that the plaintiff and her sister, by their guardian, afterward *took the possession* of the property in controversy *under the allotment* made in the partition proceedings and *held the possession* thereof *with the consent of Mrs. Morrisey* for more than twelve years, *paying all the taxes* on the land *and making lasting and valuable improvements* thereon — we think the title to the property in controversy is placed in the plaintiff. (*Newkirk v. Marshall*, 35 Kas. 77.) And the defendant Mrs. Morrisey *is now estopped* from questioning the plaintiff's title. This question as to who owned the land when the deed in question was executed has been argued elaborately by counsel, and indeed it is about the only question argued or presented by counsel.

The judgment of the court below will be reversed, and the cause remanded for further proceedings.

All the Justices concurring.

*(margin note: Homestead; partition; widow estopped from disputing children's title.)*