No. 19,716.

JAMES B. McCABE, *Appellant,* v. THOMAS H. McCABE et al., *Appellees,* and JANE McCABE, *Appellant.*

No. 19,720.

JAMES B. McCABE, *Appellant,* v. THOMAS H. McCABE et al., *Appellees,* and JANE McCABE, et al., *Appellants.*

SYLLABUS BY THE COURT.

FAMILY SETTLEMENT—*Partition—Accounting.* The main facts of a family settlement and of a partition and accounting, so far as shown by an incomplete transcript of the record, examined and the judgment thereon approved.

Appeals from Chase district court; WILLIAM C. HARRIS, judge. Opinion filed December 11, 1915. Affirmed.

*O. A. Keach,* of Wichita, for the appellants.

*R. M. Hamer,* and *H. E. Ganse,* both of Emporia, for appellee Thomas H. McCabe.

The opinion of the court was delivered by

DAWSON, J.: Here are two appeals from a judgment of the district court of Chase county. On motion of appellants, they have been consolidated; and the cause now stands as it was tried in the district court.

From the abstracts, briefs, transcript of *some* of the testimony, several affidavits, a certificate of the county clerk of Chase county showing an entry in a *road record,* and some other files and documents, we glean the pertinent facts of this lawsuit to have been as follows: One Bernard McCabe, a citizen of Chase county who died intestate in November, 1906, had been the owner of two farms and considerable personal property which included money in bank and bank stock. The two farms were known by the family as the upper farm and the lower farm, the former comprising eleven hundred thirty-two acres and the latter two hundred acres. His heirs were his widow, Jane McCabe, two sons, James and Thomas, and three daughters, Etta, Sarah and Julia—all grown to maturity. On December 4, 1906, soon after the death of Bernard, these heirs entered into a written agreement whereby the three daughters were to receive $2500 each for their interest in the upper farm. Method of payment of these sums was specified, and the result aimed at by the agreement was that the mother, Jane McCabe, should own a half interest in the upper farm, and the two brothers should each own a fourth interest therein. Appropriate quitclaim deeds were to be made by the contracting parties to carry this contract into effect.

Later a lawsuit arose between Thomas and his sisters touching their respective interests in the lower farm, but it was compromised and settled, and pursuant thereto the sisters quitclaimed to Thomas their respective interests in the lower

farm, and also their interests in the upper farm as agreed by them in the family settlement of December 4, 1906. These quitclaim deeds were executed January 20, 1912.

On October 15, 1910, Jane McCabe conveyed her interest in the upper farm to Thomas, reserving to herself a life estate and obligating herself to pay the taxes.

In 1911, the public road was opened across the upper farm and Chase county allowed $800 as damages therefor.

On December 6, 1912, James B. McCabe commenced an action against his cotenants for partition of the upper farm and for an accounting for repairs and improvements. Thomas answered and laid claim for rents and profits. Jane McCabe answered and filed a cross-petition against Thomas, alleging that her conveyance to Thomas in 1910 was without consideration and void. Thomas answered his mother's cross-petition and alleged payments to his sisters of moneys due them from their mother, and that these were made relying on his mother's conveyance to him in 1910. Many other claims and counterclaims, a mortgage on the property to the Chase County National Bank and the cause therefor and the use of the funds thus acquired, were also pleaded and in issue between the parties; but all this tangled skein was unraveled and disposed of by the district court in elaborate findings of fact and conclusions of law based thereon.

Two errors are assigned: (1) Jane and James complain because Thomas was allowed one-fourth of the rents and profits from December 4, 1906, the date of the family settlement. (2) Jane complains because her conveyance to Thomas in October, 1910, was not set aside and because she was refused a decree of ownership of a half interest in the upper farm.

1. We fear that nothing can be done by the supreme court under this assignment, and this for several pertinent reasons. In the first place, it is admitted that there is no complete transcript of the record, and appellee's objection to the transcript is meritorious. Passing that point, the determination of the district court as to the time during which Thomas was entitled to one-fourth of the rents is controlled by the facts. By the family agreement of December 4, 1906, he became the owner of one-fourth interest in the farm. It is of no consequence that

McCabe v. McCabe.

the quitclaim conveyances of his sisters evidencing that fact were not executed until 1912, nor would it affect his interest if these conveyances were never made. Nor is it material that his mother never quitclaimed to him under that agreement. She signed the agreement recognizing his one-fourth interest and agreed to execute instruments to that effect. Since she afterwards conveyed to Thomas all her interest in the upper farm, subject to a life estate, a quitclaim deed recognizing Thomas's one-fourth interest would be superfluous. Even the abridged and imperfect transcript, and the abstracts and briefs based thereon, show that the court made no mistake here.

2. Under the second assignment, we have only to do with the result of a finding of fact, and it is not suggested how this court can lay aside the established rule that the trial court's determination of facts upon competent though conflicting testimony is conclusive. We note the deed from Jane to Thomas and the consideration named therein, "one dollar and love and affection"; we note Jane's signature to the mortgage executed by Thomas to raise funds to satisfy his sisters' interests in the land and for which Jane was liable; we note her recital that she signed the mortgage "because she holds a life lease on the lands she deeded to T. H. McCabe which is included in the above-described lands." This does not cover all the evidence touching this conveyance from Jane to Thomas but it is ample to satisfy us that it was not error to uphold the deed of 1910 from Jane to Thomas.

While not formally assigned as error, a question is raised as to the district court's disposition of the road money. One year's taxes on the property were paid out of these funds, and the balance was apportioned in harmony with the interests of the parties in the general accounting.

The judgment is affirmed.