No. 21,709.

MARGARET H. RIFFE et al., *Appellees*, v. LULA B. WALTON et al., *Appellants*.

SYLLABUS BY THE COURT.

1. FAMILY SETTLEMENTS OF ESTATES — *Favorites of the Law.* Family settlements of estates are favorites of the law and, when fairly made, should not be disturbed by those who entered into them.

2. SAME—*May Differ from Statute of Descents and Distributions.* No rights of creditors being involved, it is competent for the widow and the heirs of an intestate to enter into an agreement for the distribution of an estate upon a plan different from that prescribed by the statute of descents and distributions.

3. SAME—*Widow's Share under the Settlement—Evidence—Findings.* In the family settlement involved herein, no disposition or allotment was made of a certain tract of land in which the surviving widow owned a one-half interest. She signed the partition agreement, but did not execute a conveyance of her interest in the tract, and the claim was made and evidence offered tending to show that she orally agreed

to accept certain properties as dower and in full satisfaction of her interest in the estate, including the unpartitioned tract, and also that by the use and enjoyment of these properties for years, as well as by certain acts and declarations, she was estopped to claim an interest in that tract. There was conflicting evidence on these questions, some of which was oral, and the trial court determined that the widow did not surrender nor agree to surrender her interest in the tract, and that she had not by any of her acts or declarations estopped herself to assert title to the tract. It is held that the decision of the trial court upon the disputed questions of fact is conclusive upon this court.

Appeal from Clark district court; LITTLETON M. DAY, judge. Opinion filed July 5, 1919. Affirmed.

*F. C. Price, Cale W. Carson, jr.,* both of Ashland, *O. M. Rogers,* of Covington, Ky., and *K. D. Cross,* of Savannah, Mo., for the appellants.

*W. W. Harvey,* of Ashland, and *S. W. Adams,* of Covington, Ky., for the appellees.

The opinion of the court was delivered by

JOHNSTON, C. J.:   This was an action by a number of the heirs of John E. Walton, deceased, to secure the partition of a tract of 1,760 acres of land in Clark county, Kansas, which was owned by him at the time of his death.

He died intestate and left surviving, his widow, five sons, and four daughters, all of whom had then reached their majority. His estate consisted of 1,040 acres of land in Missouri, which had been occupied for some time by his son George as a tenant; and several tracts in Kentucky, amounting to 2,013 acres; also nineteen shares of bank stock, each of the par value of $100; and advancements made to some of his children and a few promissory notes, the amount of which is not given. Under the law of Kentucky, one-half of the personal estate, after payment of debts and costs of administration, descended to the widow, and the remainder share and share alike to the children. The real property in Kentucky descended to the children, subject to the dower of the widow, which consisted of one-third of the rents and profits derived from the same during her lifetime. Under the law of Missouri then in force, the widow was given one-third of the rents and profits of the real estate during her lifetime as dower, and the children took the

Riffe v. Walton.

title thereto in equal shares subject to the dower interest. Within a few days after the decease of John E. Walton, the widow and children met at her home for the purpose of making a family settlement and a distribution of the estate under a mutual agreement. Their purpose was to ascertain what advancements and allowances had been made by Walton in his lifetime, and also to make an assignment of dower interest to the widow, and a partition of the property after the release of dower. This was not accomplished at the first meeting, but at a second one, held shortly after the first, an agreement was reached. The property partitioned among the children was of the value of about $72,000, and the division was made on the basis that each child should receive $8,000 in property or money. Two of the sons, George and John, were each charged with advancements of $2,000; one of the daughters, Margaret, was charged with $3,000; another daughter, Laura, was charged with $1,000; and an allowance of $1,500 was made to the son William. It was agreed that George should take the Missouri land at a value of $20,000, and for the balance over his share he should execute a note for $12,000 secured by trust deed on the land, the interest thereon to be paid to the widow during her lifetime, and at her death the principal to be divided equally among the nine children or their heirs. Napoleon was to take a tract of land in Kentucky valued at $10,000; Thomas, certain Kentucky land valued at $10,400; William, another tract in Kentucky valued at $12,000; and John a tract of Kentucky land valued at $10,500. The daughter Laura was to take a tract of Kentucky land valued at $4,500; Daisy and Margaret together took a tract of Kentucky land, the value of which was placed at $10,800; and Alice was to receive her share in money. Those who took property which exceeded the value of $8,000 were required to pay the excess into a fund to be paid to those receiving property of less value than $8,000, and to those who received no property at all, and in that way the shares of the children were equalized. It was agreed that there should be assigned to the widow, as dower, the town home and what is called the homestead farm of 264 acres, together with the annual interest on the note executed by George for $12,000, amounting to $600, the dividends on the bank stock, and the rents and profits from the Kansas land, but no division or disposition of the title to this land was made or agreed upon.

While the partition agreement and instruments of conveyance were being prepared, Napoleon was accidentally killed, and the former agreement was modified so that the lands which were allotted to him were to be conveyed to the widow. The partition agreement was reduced to writing and signed by the children and the widow. Deeds were executed conveying the lands to those to whom they were allotted, and these instruments were signed by the widow as well as by the other heirs. The grantees have held the possession and ownership of the tracts so allotted since that time without hindrance or interference by the widow or any of the other heirs. Until her death the widow held possession of the town house and the homestead farm, and received the rents and profits therefrom, and also has received the interest on the $12,000 note, the dividends on the bank stock, and such rents and profits as were derived from the Kansas land, which appear to have been of no consequence until about 1912. Since that time rents of a substantial amount have been received from that property. The widow died testate in 1915, and by her will disposed of all her property, making gifts of a religious and charitable nature, and specific bequests to some of her children and grandchildren, and providing also that the residue should be equally divided among her surviving children.

Upon the evidence the trial court found the recited facts, and also found that no attempt was made to partition or divide the Kansas land or the other property allotted to the widow when the family agreement was made, and that the Kansas land was thought to be of little value and was then renting for no more than enough to pay the taxes, and that neither the widow nor heirs understood the law of descents and distributions of Kansas, nor that the widow inherited one-half of the Kansas land. It was further found that there was no disposition or request upon the part of the children, or any of them, that the mother should give up any title or interest she had in the Kansas land, and that she never agreed to surrender or convey her title to the land.

The court adjudged that the widow held a half interest in the Kansas land at the time of her death, as well as the share which would have gone to her son Napoleon if he had lived, and partition was adjudged upon that basis.

In their appeal from the decision defendants insist that the estate was settled, and the rights of the widow in it were finally determined by the family settlement, that she accepted the share allotted to her and recognized and treated the agreement as binding upon her until her death, a period of seventeen years. There was no charge of fraud in the pleadings and no evidence of misrepresentation or unfairness brought out in the testimony. It is true, as defendants contend, that the law looks with favor upon compromise agreements for the settlements of estates voluntarily and fairly made by members of a family, although the property has been disposed of upon a plan different from that prescribed in the statute of descents and distributions, or different from that which might have been adjudged by a court of equity if presented to it. Where the rights of creditors do not interfere, such a distribution may be accomplished, even if no formal conveyances are made, through the application of the doctrine of estoppel. (*Crimmins v. Morrisey,* 36 Kan. 447, 13 Pac. 748; *McCullough v. Finley,* 69 Kan. 705, 77 Pac. 696; *Brown v. Baxter,* 77 Kan. 97, 94 Pac. 155, 574; *Poole v. French,* 83 Kan. 281; 111 Pac. 488; *McCabe v. McCabe,* 96 Kan. 702, 153 Pac. 509; *Freeman v. Peter,* 97 Kan. 63, 154 Pac. 270.) It has been held that where the widow and each of the children make a division of an estate satisfactorily to themselves, in which all parties concerned have acquiesced and retained the shares so allotted for a long period of years, they will be estopped from thereafter objecting to the arrangement.

"The parties to such an arrangement executed would be forever equitably estopped from disturbing it as amongst themselves, upon the most familiar principles of justice. And why shall the arrangement be broken up by a mere intermeddler? Family arrangements are favorites of the law, and when fairly made are never allowed to be disturbed by the parties, or any other for them." (*Walworth v. Abel,* 52 Pa. St. 370, 372.)

Even where a homestead was exchanged for other property and the conveyance was invalid because it was not signed by the wife, the doctrine of equitable estoppel was applied. It was held that, while the transfer was insufficient, the parties who made the insufficient transfer had accepted and enjoyed the use and benefits of the property received in exchange for the homestead, and were estopped to assert that the transfer

was insufficient. (*McAlpine v. Powell*, 44 Kan. 411, 24 Pac. 353; *Shay v. Bevis*, 72 Kan. 208, 83 Pac. 202.) The widow not only signed the partition agreement, but she also participated in the oral negotiations and settlement, and agreed to accept certain properties in lieu of the dower interest she held. Further than that, she united with the heirs in carrying out the partition agreement and had the use and benefit of property assigned to her as dower for seventeen years. The amount or value of the share set apart to her as dower, it is said, was much less than the share to which she was entitled under the law, but if the settlement was fairly made and covered all the property, it cannot be set aside because that assigned to her may have been less than she was entitled to under a statutory distribution. As defendants contend, the property allotted to her appears to have been sufficient to enable her to live comfortably and in a manner in keeping with her station in life. There is much in the testimony to the effect that she was satisfied with the allotment made. Each of the children took the share alloted to him or her in severalty, and the mother joined in the instruments conveying such shares and in carrying out the provisions of the agreement. The difficulty in the case arises largely over the omission of the parties to partition the Kansas land, and the conflict in the evidence as to the intention of the widow to relinquish or surrender her title to that land. Several witnesses testified to having heard her say that she only acquired a life interest in the land. One stated that he heard her say that she inherited a half interest in it, but was only claiming a life estate, and that that was the agreement she had made with her children. There were other witnesses who testified that on many occasions, especially from 1904 down until her death, she referred to the Kansas land, saying that she owned a half interest in it and also Napoleon's interest in the tract. As to the oral agreements made in the family settlement, the trial court said:

"It is difficult to ascertain from the evidence with accuracy all of the matters which transpired at these meetings. Of the ten persons who participated in the meetings, six of them are now dead, and those now living appear to have taken rather minor parts in the discussions and appear unable to relate distinctly all that transpired. No notes or minutes were made of the meetings or if there were they were not preserved."

Riffe v. Walton.

In view of the finding of the trial court upon the conflicting evidence, it cannot be held that the widow was estopped to claim title to her half interest in the Kansas land. An owner of land cannot be deprived of it under the doctrine of estoppel unless the facts giving rise to estoppel are established by clear and convincing proof. It cannot be done by this court upon disputed facts, where the trial court has found that the evidence did not prove relinquishment or estoppel. It is conceded that a half interest in the Kansas land descended to the widow upon the death of her husband. She never executed a conveyance of it to the heirs or to any one else. The trial court, upon the conflicting vidence, has found that she was never requested to give up any interest or title she had in the land and had never agreed to surrender or convey her title to any one. It is true that defendants in their evidence have made a strong case of acquiescence and of conduct upon which to base an equitable estoppel against her, and if the trial court had found for the defendants its finding might have been sustained under the rule of the authorities mentioned; but there was strong evidence to the contrary, much of which was oral, and the trial court has determined the conflict in favor of the plaintiffs, holding upon what appears to be sufficient testimony that there was no acquiescence, no surrender or relinquishment of title to the Kansas land, and, consequently, no estoppel. Although the family met to partition the entire estate, the Kansas land and some other property was not in fact partitioned. It is evident from the testimony that all of the interested parties regarded it to be of little value, as it then earned no more than enough to pay the taxes imposed on it. An attempt was made to have some of the children accept it as a part of their allotment, but none of them were willing to take it. The evidence offered in behalf of plaintiffs warrants the inference that the Kansas land was purposely left for future settlement and division. Under the agreement, the widow was given the possession and use of all the Kansas land, but she owned one-half of it in her own right and was entitled to the possession of that extent as well as the one-ninth interest which she inherited from her son Napoleon. The taking of possession of her own property afforded no ground for estoppel. The evidence of plaintiffs tends to show that there was no intention of the parties to transfer the title to the Kansas land or to

make a partition of it in that family settlement, and this was partly due to the fact that it was regarded to be insignificant in value, and partly because none of the children was willing to accept it as his or her share. It was therefore left for disposition at some future time, and in the meantime the widow was given the possession and use of the children's half interest, which at the time appeared as likely to be a burden as a benefit. Apart from these considerations, a number of witnesses gave testimony to the effect that the widow had claimed to own a half interest as well as Napoleon's share, and stated that she could dispose of that part of the estate as she pleased. The evidence is in conflict as to the scope of the family settlement, the intention of the parties in making it, and as to acts and declarations upon which equitable estoppel is claimed. The disputed questions of fact having been determined by the trial court, its decision, according to a long-established rule, is conclusive upon this court.

The judgment of the district court is affirmed.

BURCH, and PORTER, JJ., dissent.