PHILIP CONBOY *et al.* v. THE KANSAS CITY & SOUTH-
WESTERN RAILWAY COMPANY.

RIGHT-OF-WAY CONTRACT — *Homestead* — *Specific Performance* — *Error.*
In an action brought by a railroad company to enforce specific per-
formance of a right-of-way contract, signed by the husband alone,
over three hundred and twenty acres of land, and it appears that a
part of the land embraced in the contract is the homestead of the
owner, but the pleadings, findings and evidence fail to show what
particular part of the land is occupied as a homestead, it is error in
the trial court to decree specific performance as to the whole of the
tract.

*Error from Johnson District Court.*

THE facts are stated in the opinion.

*A. Smith Devenney,* for plaintiffs in error.

*Beeson & Baker,* for defendant in error.

Opinion by SIMPSON, C.: The Kansas City & Southwestern
Railway Company commenced this action in the district court
of Johnson county on the 28th day of March, 1887, to enforce
the specific performance of the following contract, to wit:

"Know all men by these presents, that we, Philip Conboy,
in consideration of one dollar and the benefits to be derived
from the construction of its railroad, do hereby agree, upon
demand, at any time within six months from the date hereof,
to convey to the Kansas City & Southwestern Railway Com-
pany, its successors or assigns, by a good and sufficient deed,
upon receipt of said sum of money, a strip of land fifty feet
in width on each side of the center line of the railroad of
said company as the same is now or shall hereafter be located
over and across the following-described land in Johnson
county, Kansas, to wit: The northeast quarter and the south-
east quarter of the northwest quarter of section eight, town-
ship fifteen south, range twenty-five east; the above amount
to be paid when said depot and side-track are built as pro-
vided on back of this contract, the same to be used for rail-
road purposes only.

"Witness our hands and seals, this 9th day of June, 1886.
[Signed] PHILIP CONBOY. (Seal.)"

[Indorsed:] "The conditions of this contract are such that it will be void if the said Kansas City & Southwestern Railway Company shall not by January 1, 1887, erect a depot to cost not less than twelve hundred dollars, within eighty rods of the point where said railway crosses the south line of section five, township fifteen south, range twenty-five east, county of Johnson, state of Kansas; also a side-track not less than 100 feet in length, and stock-pens on said side-track."

The petition alleges that the railroad company had complied with all the conditions of the contract on its part; that during the construction of its line the defendants were occupying the premises as a residence, and knew it was so constructing its line in pursuance of said contract, and that they did not object, but consented thereto. The company prays for a conveyance in accordance with the terms of the contract, and tenders the sum of one dollar as therein specified, as a part consideration. The defendants answer by a general denial. At the September term, 1887, the case was tried by the court, but special questions of fact were submitted to a jury, and special findings were returned as follows:

BY PLAINTIFF.

"1. How far from the line of the railroad, as constructed through the farm of the defendant, Philip Conboy, was the dwelling-house occupied by the defendants while the railroad was in process of construction through the said farm? A. Three-quarters of a mile.

"2. How large a farm was the farm of Philip Conboy, through which plaintiff constructed its railroad? A. Three hundred and twenty acres of land.

"3. When did Sarah Conboy first learn that the railroad of the plaintiff was being constructed through her husband's farm? A. Three days after it commenced work on said farm.

"4. Did she, after learning that the railroad of the plaintiff was being constructed through the said farm, and before the work of construction through said farm was completed, notify the plaintiff or any of its agents that she objected to the construction of said railroad through said farm? A. No.

"5. When did Sarah Conboy first learn that her husband, Philip Conboy, had contracted with the plaintiff for the right-of-way through said farm? A. Two months after the plaintiff commenced work on defendants' farm.

"6. Did she, after learning of said contract, notify the plaintiff that she objected thereto?    A. No.

"7. When was the railroad constructed through said farm? A. In the summer and fall of 1886.

"8. At the time the defendant Philip Conboy was requested to execute a deed to the plaintiff for the right-of-way, did the plaintiff, by its agent, C. W. McCracken, inform him that plaintiff was ready to fulfill the contract if it was not fulfilled in any respect; and did said Conboy then specify wherein the contract had not been fulfilled?    A. No.

"9. Was the contract substantially complied with by the plaintiff, and if not, state fully wherein it was not.    A. Yes.

"10. If the jury, in answer to the 4th and 5th questions of the defendants, say that the money mentioned in the contract was not paid or tendered, then state the reason why it was not.    A. Because defendants would not deed to plaintiff the right-of-way through defendants' farm."

### BY DEFENDANTS.

"1. Were said lands on the 9th day of June, 1886, the homestead of the defendants?    A. Yes.

"2. Did Sarah Conboy have knowledge of, and did she consent to (either or both) her husband, Philip Conboy, executing on the 9th day of June, 1886, unto said railway company the written contract set forth in plaintiff's petition?    A. No.

"3. Has the money consideration for executing and delivering said written contract expressed therein been paid to said Philip Conboy?    A. No.

"4. Was said money consideration tendered to said Philip Conboy prior to the commencement of this suit (March 28, 1887)?    A. No.

"5. Was a deed demanded of or from said Philip Conboy within six months from June 9, 1886?    A. No.

"6. Had the railway company constructed the cattle-pens called for by the contract by January 1, 1887?    A. Yes.

"7. Had the railway company constructed a depot building at a cost of not less than twelve hundred dollars, at the point designated in the contract, by January 1, 1887?    A. Yes.

"8. Had the railway company constructed the cattle-pens called for by the contract at the time of commencing this suit (March 28, 1887)?    A. Yes.

"9. Had the railway company constructed a depot building at a cost of not less than twelve hundred dollars at the

point designated in the contract, at the commencement of this action (March 28, 1887)? A. Yes.

"10. Did the railway company demand a deed of or from Sarah Conboy at any time prior to the commencement of this action, March 28th, 1887? A. No."

The trial court also made special findings as follows:

"1. Philip Conboy executed and delivered the written instrument, with the conditions thereon indorsed, as set forth in the plaintiff's petition herein unto the said defendant company.

"2. Sarah Conboy is the wife of Philip Conboy, and she did not join her husband in the execution of the same.

"3. The premises in the instrument described were at the time and now are the place of residence, and part of said premises is occupied as the homestead of defendants with their children.

"4. Sarah Conboy never consented. to the construction or location of said railroad over or on or through said lands or any part thereof, or did not know that her husband had executed said contract until two months after the company had begun to construct its road-bed.

"5. Plaintiff constructed cattle-pens and cattle-chute, and side-track or switch, and had laid the main track and completed the same prior to January 1, 1887; and erected the depot building, and the same was completed except the flue by the 1st day of January, 1887, and the same cost not less than $1,200.

"6. Plaintiff demanded, prior to the commencement of this action, of the said Philip Conboy only, the deed provided for in said contract, and Philip Conboy refused to execute said deed, giving as a reason for such refusal that plaintiff had not complied with its contract, but did not specify in what respect plaintiff had failed to comply with said contract; and plaintiff's agent then informed him that defendant was ready to comply with said contract, if it had not done it, but said demand for a deed was not made within six months from June 9, 1886.

"7. At the time of demanding said deed plaintiff did not tender or offer to defendants, nor either of them, the money consideration expressed in said contract to be paid by plaintiff to defendants before executing said deed.

"8. Plaintiff tendered to defendants the sum of one dollar

in silver, on the trial of this cause, and the defendants severally refused to accept or receive the same.

"9. Sarah Conboy first learned of the plaintiff constructing its railroad across said homestead three days after it commenced work on road-bed, and made objection to the men at work thereon."

The legal conclusions of the trial court are as follows:

"1. Plaintiff is entitled to a good and sufficient deed of conveyance from the defendant Philip Conboy forthwith for the strip of ground described and provided for in said written contract set forth in plaintiff's petition in this action.

"2. Plaintiff is not entitled to such conveyance as against or from said Sarah Conboy, wife of said Philip Conboy."

The judgment is as follows:

"1. It is therefore ordered, adjudged and decreed by the court here, that the said Philip Conboy make, execute, acknowledge and deliver, within ninety days from this date unto said plaintiff a good and sufficient deed, conveying to said plaintiff railroad company the strip of ground described in said contract set forth in plaintiff's petition herein, and that upon failure so to do then this decree to stand as and for such conveyance at law and in equity.

"2. That plaintiff have and recover of and from said defendant Philip Conboy its costs in this behalf expended, taxed at $——, and that execution issue therefor after the lapse of ninety days from this date.

"3. That defendant Sarah Conboy go hence without day, and that she have and recover of and from said plaintiff railroad company her costs in this behalf made and expended, taxed at $——, and that execution issue therefor after the lapse of ninety days from this date."

The railway company alleged in its petition that Conboy and wife "at the time of the execution of the right-of-way contract, and still are, occupying said lands as a residence." Conboy and wife in their answer deny each and every allegation in the petition, except as to their marriage relation, and that said lands were and are their place of residence and homestead. The jury find in answer to special interrogatories that the land consisted of three hundred and twenty acres, and that at the date of the execution of the right-of-way contract, the

land was the homestead of Conboy and wife.    The trial court in the third special finding states "that the said premises in the said instrument were at the time and are now the place of residence, and part of said premises is occupied as the homestead of said defendants with their children."

It is clear that by the decisions of this court in the case of *Pilcher v. A. T. & S. F. Rld. Co.*, 38 Kas. 516, and others, that the contract for the right-of-way across the homestead is void, because not signed by the wife.    But the pleadings, the findings of the court and jury, the evidence, and the decree, all fail to designate what part of the land is occupied or claimed as a homestead.    The pleadings, findings and evidence all agree that there are three hundred and twenty acres of land, or two quarter-sections, but we are not advised on which quarter-section the dwelling-house is located.    If we could determine the location and extent of the homestead, we could so modify the judgment as to conform to our views as to the ultimate rights of all parties; but in the absence of such a showing about the homestead, we are powerless to do this. We are reasonably well satisfied that the railroad company has substantially complied with all the conditions of the contract upon its part.    It is too plain for dispute, that the defendants below are not entitled to hold the three hundred and twenty acres of land as a homestead.    Hence the error of the court below consists in decreeing specific performance for the whole tract, when a part of the right-of-way contract, being that over the homestead, is void as to both Mr. and Mrs. Conboy.    For this error we recommend that the cause be reversed, and remanded for further proceedings.

Right-of-way contract— homestead— specific performance— error.

By the Court: It is so ordered.

All the Justices concurring.