LUCINDA PILCHER v. THE ATCHISON, TOPEKA & SANTA FÉ RAILROAD COMPANY.

1. HOMESTEAD — *Alienation for Right-of-Way.* The husband cannot, without the consent of his wife, grant or alienate the right-of-way for a railroad across land owned by him and occupied as a homestead by his family.

2. HOMESTEAD; *Consent of Wife to Alienation, How Shown.* The constitution of the state does not in express terms require the alienation of the homestead by the joint consent of husband and wife, when that relation exists, to be evidenced by a writing; and hence the consent of the wife to the grant or alienation of an easement in their homestead for the right-of-way of a railroad may be shown by such evidence as is deemed necessary to establish any other material fact.

*Error from Johnson District Court.*

EJECTMENT, brought by *Pilcher* against the *Railroad Company.* A trial was had at the March Term, 1884, resulting in a judgment for defendant, which was reversed by this court. (34 Kas. 46.) Another trial was had, at the March Term, 1886, and judgment for costs rendered against plaintiff. The trial was by court, Hon. S. B., judge *pro tem.*, presiding. The court made the following special findings of fact:

"1. Both plaintiff and defendant claim title from Thomas Pilcher, now deceased.

"2. In his lifetime the said Thomas Pilcher was the husband of this plaintiff.

"3. From the year 1868, up to the time of his death, in 1879, Thomas Pilcher and the plaintiff resided, as husband and wife, upon the quarter-section of land, a part of which constitutes the premises in controversy, with their family, and made it their home during all of this time; said quarter-section of land is not a part of any incorporated city.

"4. From the time of the death of her husband up to the present time, the plaintiff has continually resided and made her home upon said quarter-section, being the S. E. ¼ of sec. 35, town 13, range 23, in Johnson county, Kansas.

"5. The plaintiff has a life estate in said quarter-section of land, with power of sale, which she received by the will of her late husband, Thomas Pilcher.

"6. In 1871 and 1872, the St. Louis, Lawrence & Denver R. R. Co. built a railroad across said premises, under some kind of an agreement with Thomas Pilcher, the then owner thereof; by due process of law the Pleasant Hill & De Soto Railroad Co. succeeded to the right of the St. Louis, Lawrence & Denver R. R. Co.

"7. The St. Louis, Lawrence & Denver Railroad Company built its road upon the land in controversy under contract for the right-of-way made with Thomas Pilcher in his lifetime, and without any notice from plaintiff of any objection upon her part. The terms and conditions of the contract the court cannot from the evidence find.

"8. The railroad over the premises in controversy was, when built, and for a number of years thereafter, used as a line of railroad running from Cedar Junction, Kansas, to Pleasant Hill, Mo., and as such was used in running regular

trains between those points for a number of years; but at present the premises in controversy are not used for running trains over, except as a switch track to transfer cars from the Kansas City, Fort Scott & Gulf R. R. to the Southern Kansas R. R., and the said line of railroad from Olathe to Cedar Junction has been abandoned and is not used for the running of trains thereon at all.

"9. Plaintiff and defendant lived on the premises during the building of the St. Louis, Lawrence & Denver Railroad, in full view of the same.

"10. Plaintiff has never had any conversation, at any time, with anyone representing the railroad company in reference to the passage of the railroad over their land; but she did frequently while the railroad was building, and since, protest against it to members of her family, but she never notified any of the agents or employés or contractors of the railroad company while the road was being constructed that she objected to the construction of the road; and she was living upon said quarter of land about one hundred yards from the nearest point of the line of railroad during all the time the railroad was in process of construction through said quarter-section, and in going from her residence to the city of Olathe she did pass over the line of said road in process of construction.

"11. During the lifetime of Thomas Pilcher, he and his wife, this plaintiff, joined in a warranty deed to their son, R. A. A. Pilcher, conveying to him a portion of said quarter-section of land, and in said deed referred to the said company's right-of-way as a boundary; and also another deed conveying to their son, J. R. F. Pilcher, another portion of said quarter-section of land, over which said road runs, and referring to said railroad as a boundary."

Upon the foregoing findings of fact, the court found as a conclusion of law that the plaintiff *Pilcher* is not entitled to recover in this action. New trial denied. Judgment for costs, against the plaintiff. To each and all of the foregoing findings of fact, the conclusion of law, and the rendition of the judgment, the plaintiff duly excepted, and has brought the case here.

*Parker & Seaton,* for plaintiff in error.

*Geo. R. Peck, A. A. Hurd,* and *Robert Dunlap,* for defendant in error.

Opinion by SIMPSON, C.: The plaintiff in error has continuously resided upon the land which is the subject-matter of this controversy, since the year 1868. Her husband, in whom the title vested, died in 1879, leaving by will the plaintiff in error, at least a life estate in this land. She has claimed and does claim it as her homestead, and further claims that by force of her homestead rights the defendant railway company never acquired any easement therein, and she brought her action in ejectment to recover that portion occupied and used by the railway company. Counsel for defendant in error contend that, as the plaintiff in error elected to take under the will, her homestead right is waived by that election; and they cite *Watson v. Christian*, 12 Bush (Ky.), 524, in support of their view. They go still further, and deduce from that decision that as she claims under the will she ought not to be permitted to set up a claim of homestead under the statute, but she should be bound by everything her husband did, to the same extent that he would be bound, because she is privy in estate by virtue of the will. The Kentucky case may have been rightfully decided under the homestead provisions of that state, but this case cannot be accepted as an exposition of the law of this state. We make no criticism upon it; all we say is, that it is not to be taken as an interpretation of the operation of our constitutional provisions and statutory enactments upon the subject of the homestead. Thomas Pilcher had the legal title to the land in his lifetime, and it was occupied by him and his family as a residence. It was his homestead, and was unquestionably the homestead of his wife and children. When he died and ceased to be the head of the family, his wife, this plaintiff in error, became the head of the family, and she was entitled to be so considered. The land continued to be a homestead after his death to the same extent that it was before, and so continues until after all the children arrive at the age of maturity, and until it shall have been partitioned among the heirs. It cannot be made subject to the payment of the debts of the husband. The death of the

husband does not affect the homestead rights of the wife or children in any respect. If the land descends to them, it is still a homestead. If the husband wills it to the wife, as in this case, during her life, the life estate supports the homestead right. Any estate that is vendible under an execution will support the homestead exemption. VALENTINE, J., in *Randal v. Elder*, 12 Kas. 261, says:

"We do not think it necessary that all these lots or parcels of land should be held by an absolute fee-simple title, but we think it necessary that they all be held by some kind of title or *interest* different from that which the whole public may have to the property."

Dillon, J., in *Bartholomew v. West*, 2 Dill. 293, says:

"When the statute speaks of property owned by the debtor it does not mean that the ownership must be of full legal title. It is sufficient that the interest may be such as may be sold on execution, or subject to the payment of debts."

In *Robinson v. Smithey*, 80 Ky. 636, the court said:

"That Mrs. Robinson is entitled to a homestead, we think is clear. Her husband devised the entire tract of land to her for life, the remainder to his children, and she was in the actual possession and occupancy with her family. She is the owner and in possession of this tract of land, with a life estate vested in her by the provisions of the will. She can use, sell or dispose of this interest as she pleases, and we see no reason why her right to a homestead is not embraced by the statute. She occupies it as a homestead, and owns it for life. She is asserting her right because she is the owner, and not by reason of having derived it from her husband. It is immaterial in what manner she derives title, if she is the owner and occupies the estate as a homestead. In some of the states the homestead exemption is held to apply to an estate for years. See *Patton v. Deberard*, 13 Iowa, 53; *Johnson v. Richardson*, 33 Miss. 462. In Illinois the owner of a life estate is held entitled: *Deere v. Chapman*, 25 Ill. 610."

Other courts have gone to as great length in holding that any vendible estate will support the homestead right. The plaintiff in error in this case holds by a devise, which gives her an estate for life, with power of sale, and any remainder

goes to the children begotten of the marriage. She has such an estate in this land, without the will, or operation of the statutes of descents and distributions, as will enable her to claim it as a homestead, because she has been in the actual possession of it, residing thereon ever since 1868. It must be held, for all the purposes of this case, that her homestead rights attached to the land when she first occupied it with her children, as the wife of Thomas Pilcher, the then owner, and that it was at the time of the commencement of this action still her homestead. The court below found that, in 1871 and 1872, the St. Louis, Lawrence & Denver Railroad Company built a railroad across said land, under some kind of an agreement with Thomas Pilcher, the then owner thereof, and that by due process of law the defendant in error succeeded to the rights of that company; that the St. Louis, Lawrence & Denver Railroad Company built its road upon the land in controversy, under a contract for the right-of-way made with Thomas Pilcher in his lifetime, and without any notice from the plaintiff of any objection upon her part. The court found that the terms and conditions of the contract cannot be stated from the evidence.

It will be seen that the substance of the findings of the court is, that some contract for the right-of-way over the land was made by the railroad company with Thomas Pilcher, in his lifetime. The railroad company now prefers to put it in the light of a parol agreement rather than in the light of a parol license. In this view, it is not necessary to pass upon a question much discussed in the briefs, as to whether a license under which work has been done and money expended, is revocable. Assuming that there was a parol agreement between these parties, founded on the several considerations claimed — these being a change of route, so as to locate on the Pilcher homestead; the erection and maintenance of a depot; the employment of Pilcher's son by the company, and every other consideration alleged — the question then remains: is the right-of-way of a railroad through and across the homestead such an interest, incumbrance, lien, or diversion from its proper use,

as to require the joint consent of the husband and wife? This is an important question, and it is not to be disposed of without careful consideration. The tacit condition underlying the title to all land in this state is, that in case it shall be wanted for public use, it can be taken, by paying just compensation therefor; if only a part is taken, just compensation is made for that, and for the injury or depreciation of the remainder of the tract.

By the statutes of this state, railroad companies are allowed to appropriate land for public purposes, and the perpetual use of such land is vested in the company, its successors and assigns. The difference between the perpetual use of land, and the fee to it, is only nominal. The interest a railroad company acquires in land in this state for a right-of-way, while only an easement, may be permanent in its nature, and may be practically exclusive. The value of the remaining fee, burdened by such an easement of perpetual use, is only nominal. (22 Minn. 286; 68 N. Y. 591; 122 Mass. 110.) The statute seems to recognize this, because it requires the commissioners to assess the value of the land taken. The amount of land used by the railroad company in this case is about seven acres, of which it had necessarily the exclusive control and perpetual use. Of course, if the husband can grant the right-of-way to this railroad company, he can grant it to others, and by this means the wife and children can be deprived of the use and enjoyment of a greater part of the homestead. This court held, in the case of *Coughlin v. Coughlin*, 26 Kas. 116, that "the husband cannot, without the consent of the wife, execute a lease of a homestead, and give possession thereof to a tenant." In this case the lease was executed for five years, but we apprehend the length of the term of the lease can make no difference, the reason of the rule being based upon the general principle deducible from our organic law, that the husband can do no act that will interfere with the occupancy and use of the homestead without the consent of the wife. It has been held by many courts of last resort, that the right-of-way of a railroad across the land conveyed is such an incumbrance as is a breach

of the covenants against incumbrances.    A leading and early
case is that of *Kellogg v. Ingersoll*, 2 Mass. 97, decided by
Chief Justice Parsons, approved by the cases of *Prescott v.
Trueman*, 4 Mass. 627; *Harlow v. Thomas*, 15 Pick. 68; and
*Prescott v. Williams*, 5 Met. 433.   To the same effect are the
following cases: *Mitchell v. Warner*, 5 Conn. 497; *Hubbard v.
Norton*, 10 id. 423; *Herrick v. Moore*, 19 Me. 313; *Haynes v.
Young*, 36 id. 557; *Lamb v. Danforth*, 59 id. 322; *Prichard v.
Atkinson*, 3 N. H. 335; *Clark v. Estate of Conroe*, 38 Vt. 469;
*Kellogg v. Malin*, 50 Mo. 496; *Beach v. Miller*, 51 Ill. 206;
*Barlow v. McKinley*, 24 Iowa, 69.

All the authorities state that an easement constitutes an in-
cumbrance on land and interferes with the absolute dominion,
exclusive use and uninterrupted enjoyment of it.    A remark
of Judge VALENTINE, in the case of *Randal v. Elder*, 12 Kas.
261, is quoted by counsel for defendant in error, as in oppo-
sition to this line of authorities, but when his remark is con-
sidered in the light of the facts in that case, and the question
he was discussing, it will be found not to warrant any such
interpretation.    The question was whether the debtor could
hold as a homestead two or more town lots, separated from
each other by an alley, and it was held that he could not; and
it is said in this connection that an easement might be created
upon or through the land, without in any manner affecting its
character as a homestead.    The court meant that the easement
would not so divide the land, or segregate one tract from an-
other, but that a homestead would be claimed on the whole
tract, and this we indorse now, as the law of this case, and
would hold, if necessary, that while the homestead right of
the plaintiff is incumbered by the right-of-way, it is still her
homestead on both sides of the strip of land used by the rail-
road company.

We have not overlooked the case of *Randall v. Texas Cent.
Rly. Co.*, 63 Tex. 586, which decides in effect "that the hus-
band may, without being joined by his wife, grant a right-of-
way to a railway company across a tract of land belonging to
himself and wife, and occupied by them as a homestead."

We cannot follow that case; the statement in the syllabus is, that the land belonged to husband and wife, and if by that it is meant that the title vested in them both, the grant by the husband would not bind the separate property of the wife. This is so clear that elaboration would not be justified. A reason given is, that the husband can lease the homestead in Texas without the consent of the wife. This cannot be done in this state, if the lease would in any manner interfere with the wife's occupancy and use of the homestead. The court says "if the husband should attempt to so exercise this right as to destroy the homestead, or to materially affect it as such, upon proper application the courts would interpose with their equitable power to prevent it." We think the best protection to the wife and children is by a total denial of the right of the husband to incumber the land for this purpose, except with the joint consent of the wife.

1. Homestead— alienation for right-of-way.

The case of *C. & S. W. Rld. Co. v. Swinney*, 38 Iowa, 182, has been examined with some care; it holds that "the husband can convey a right-of-way over the homestead without the concurrence and signature of the wife to the deed, when such conveyance will not defeat the substantial enjoyment of the homestead as such." The qualifying expression involves trouble. Who is to determine whether or not the right-of-way will not defeat the substantial enjoyment of the property? The court says if the homestead were a single lot, and the right-of-way occupied it all, or most of it, the case would be very different. Why different? The rule of the Iowa case is too flexible. We cannot adopt it. In this state all questions affecting the rights of the wife and children in the homestead must be discussed and determined by the constitutional and statutory enactments regarding them. These create them ; fix their limits; direct their operation, and have such mandatory force of expression that this court can discharge its duty respecting them only by a strict adherence to the letter of the organic command. The homestead law is a part and parce of the public policy of the state, and its provisions in cases

of this character cannot be waived or avoided, except by an exact and literal compliance with the mode and manner it has prescribed.

A steady and unwavering adherence to the exposition of the scope and bearing of this provision of the constitution as made in the early case of *Morris v. Ward*, 5 Kas. 239, is not only demanded by its express terms, but the improvidence and necessities of the father and husband are so frequent; the avaricious attacks and greedy encroachments of creditors are so persistent and insinuating, that all judicial powers must be constantly exerted to preserve to the beneficiaries the full extent and measure of this great constitutional creation. Its immunity from such attacks can best be protected by repeated judicial declarations that no interest, incumbrance or lien can attach to or affect the homestead, unless given by the joint consent of husband and wife, except those specifically mentioned in the organic law. The only way to bind the wife to an alienation, lien, incumbrance, contract of sale, lease, or any interest whatever in the homestead that will interfere with or deprive her of the free use, occupancy and enjoyment of all and every part thereof, is her consent freely given, jointly with that of her husband. The fact of joint consent is best evidenced

2. Homestead; consent of wife to alienation, how shown.

by a writing to that effect, but the constitution does not in express terms require that it shall be so shown, and hence it can be established by such facts and circumstances as the necessity of particular cases requires. Probably no greater amount of evidence or more strict proof will be required to establish it, than is deemed necessary to establish any other material fact, but there certainly must be some showing of joint consent, as required by the constitution. There is no special finding of the court below, that there was consent on the part of the plaintiff in error. It is true that it may be fairly said that it is included in the general judgment, but we are of the opinion that all the findings taken and considered together do not authorize such a judgment. There is not such an affirmative showing in this case as satisfies a reasonable mind that there was the required con-

sent. Silence is not enough under the circumstances of this case. The execution of deeds of a part of the homestead to the children, in which the right-of-way of the railroad is referred to as a boundary line, is not so positive an act of recognition as to imply previous consent, for it is difficult to perceive how the recognition of a natural or artificial object, as a dividing line, can be held to imply the legality of the existence, or the right of its location at that particular place.

Then again, the finding as to the alleged parol agreement between Thomas Pilcher and the railroad company is not complete; there may have been such an agreement, but what its terms or conditions were, or are, cannot be stated. How can specific relief be granted on such an intangible basis? Under the evidence and findings, the plaintiff in error had an undoubted right to recover the possession of that portion of the right-of-way over which the running of trains had ceased, and the use of which for railroad purposes had been abandoned.

For these material errors, it is recommended that the case be reversed, and remanded, with instructions to sustain the motion for a new trial.

By the Court: It is so ordered.

All the Justices concurring.