Durand v. Higgins.

IDA M. DURAND *et al.* v. ANNA M. HIGGINS *et al.*

No. 13,135.   (72 Pac. 567.)

SYLLABUS BY THE COURT.

1. CONVEYANCE — *Collateral Agreement — Deed and Contract Construed.*   The grantor in a warranty deed containing full covenants, which would, standing alone, convey to the grantees an absolute title in fee simple, took back from the grantees as a part of the transaction an agreement whereby they covenanted not to sell or dispose of any part of the granted premises during the lifetime of the grantor, without his written consent, and that all of such property should be under his control and direction so long as he should live, with right to sell and convey the same as though no deed had been given, and agreeing that the grantees should sign all deeds for such property when so requested by the grantor. *Held*, that the result of such transaction was to convey *in præsenti* an estate in the premises, and hence it was not testamentary and could not be revoked at the will of the grantor; and *held further*, that if repugnance be found between such agreement and the estate conveyed by the deed, the repugnant words of the agreement must yield, for while an agreement so given back may be used to lessen, enlarge, explain or qualify the estate conveyed by the deed it cannot totally destroy such estate.

2. ——— *Homestead — Joint Consent.*   A wife, prior to the execution of a deed to the homestead by her husband, expressed her willingness to join therein, but *did not do so*, because it was stated by her husband that it was not necessary.   After the execution and delivery of such deed by her husband, she expressed herself as being satisfied with it.   *Held*, that a joint consent of husband and wife is not thereby shown.

3. ——— *Fraud — Quieting Title in Grantor.*   A grantor of a conveyance made for the purpose of defrauding his creditors, or one standing in his shoes, cannot have his title quieted as against such conveyance.

4. CIRCUIT COURT OF SHAWNEE COUNTY — *Jurisdiction.*   Under the act creating the circuit court of Shawnee county, the court had authority to call a special term thereof.

5. PRACTICE, SUPREME COURT — *Cross-petition in Error.*   This court has no jurisdiction to entertain a cross-petition in error unless the same be filed within one year after the rendition of the judgment complained of.

Error from Shawnee district court; Z. T. Hazen, judge. Opinion filed May 9, 1903. Reversed.

### STATEMENT.

THIS was an action by Anna M. Higgins to quiet her title to certain real estate in Shawnee county and to compel the cancelation of a certain deed held by the plaintiffs in error, and a reconveyance of the title evidenced thereby. The issues were tried to the court. Its findings of fact and conclusions of law were as follows:

### "FINDINGS OF FACT.

"1. On June 11, 1888, and for many years prior thereto, the defendant Hiram Higgins was the owner of the following-described real estate situated in Shawnee county, Kansas, to wit: Lots No. 14, 16 and 18 on Polk street and lot No. 234 on Kansas avenue in the city of Topeka, the southeast quarter and the northeast quarter of section 11, township 12, range 15.

"2. On June 11, 1888, Hiram Higgins executed and delivered a deed of conveyance of all of the property described in finding No. 1 except the east sixty acres of the northeast quarter of said section 11, township 12, range 15, to Kelley S. E. Higgins, Hiram F. Higgins, William I. Higgins, and Ida M. Durand, who were the children of said Hiram Higgins, but Mary Higgins, who was then the wife of said Hiram Higgins, did not join in said deed. Said deed was acknowledged before C. E. Moore, a notary public, on June 11, 1888, and was filed for record in the office of the register of deeds of Shawnee county on June 12, 1888. A copy of said deed is attached to the plaintiff's amended petition, marked 'Exhibit A,' is hereby referred to and made a part of this finding of fact.

"At the same time and as part of the same transaction, and in consideration of said deed, the grantees therein named, Hiram F. Higgins, Kelley S. E. Higgins, William I. Higgins, and Ida M. Durand, executed

and delivered to Hiram Higgins a certain agreement, which was on April 2, 1892, filed in the office of the register of deeds of Shawnee county, but was not acknowledged. A copy of said contract is attached to the plaintiff's amended petition, marked 'Exhibit B,' is hereby referred to and made a part of this finding of fact. While this deed and agreement bear different dates, yet as a matter of fact they were both delivered on the same day, June 11, 1888.

"3. On February 5, 1889, Hiram F. Higgins, Kelley S. E. Higgins, William I. Higgins, and Ida M. Durand, the grantees mentioned in the deed referred to in finding No. 2, executed a power of attorney to Hiram Higgins, the grantor in said deed, which power of attorney was duly filed for record in the office of the register of deeds of Shawnee county. A copy of said power of attorney is attached to plaintiff's petition, marked 'Exhibit C,' and is hereby referred to and made a part of this finding of fact.

"4. The deed referred to in finding No. 2 was executed by Hiram Higgins partly as a gift to his children, in consideration of love and affection for them, and partly for the purpose of defrauding one of his creditors, who then had a suit pending against him in the district court of Shawnee county, which suit afterwards ripened into judgment. After numerous efforts were made by said creditor to collect said judgment, Hiram Higgins paid the same in February, 1892.

"5. William I. Higgins died intestate, without issue and unmarried, on June 6, 1890, and Hiram F. Higgins died intestate, without issue and unmarried, in November, 1900.

"6. In the year 1878, and for a long time prior thereto, Hiram Higgins was the owner and in possession of all that part of the southeast quarter of section 11, township 12, range 15, lying south of the Shunganunga creek, in Shawnee county.

"Mary Higgins was the wife of Hiram Higgins. William I. Higgins, one of the sons of Hiram and Mary Higgins, was of weak and feeble mind, disa-

greeable, and required considerable care. An arrangement was made by which, in the fall of 1878, a house of about five rooms was built on the tract last above described, with the understanding that William I. Higgins and Hiram F. Higgins should occupy said house and have the use of said tract of land. Mary Higgins, the mother of said William I. Higgins and Hiram F. Higgins, was anxious that this arrangement should be carried out, and for that purpose used about $900 of money that she had received from her father's estate in the erection of said house. After said house was completed, or nearly so, William I. Higgins and Hiram F. Higgins moved into it, and each of them continued to live there until his death.

"7. Hiram Higgins and his wife, Mary Higgins, had possession of all the real estate described in finding No. 1 continuously up to the time of the death of said Mary Higgins, which occurred January 2, 1894, either in person, by tenant, or as described in finding No. 6.

"8. On May 11, 1892, the defendant Kelley S. E. Higgins commenced suit in the circuit court of Shawnee county, Kansas, against Hiram Higgins, Hiram F. Higgins, Ida M. Durand, claiming that he was the owner in fee simple of an undivided one-fourth interest in all of the land described in finding No. 2, and claiming that he was entitled to the immediate possession of said one-fourth interest, and prayed for partition and for the recovery of the possession of his interest in said land. The defendants in said suit, Hiram Higgins, Hiram F. Higgins, and Ida M. Durand, were personally served with summons, but the defendants Hiram F. Higgins and Ida M. Durand filed no answer or pleaded.

"On November 14, 1892, Hiram Higgins filed an answer in said suit, consisting, first, of a general denial, and alleged the execution of the deed referred to in finding No. 2 ; that said conveyance was made without consideration and at the solicitation of his children ; that while said deed purported to convey the title to said property in fee, yet it was understood

and agreed that the conveyance was merely a conveyance in trust; that cotemporaneously with the execution of said deed the contract referred to in finding 2 was made; that in pursuance to said contract, the makers thereof, on the 5th day of February, 1889, executed to Hiram Higgins the power of attorney referred to in finding No. 3; that defendant Hiram Higgins presented to the plaintiff Kelley S. E. Higgins and to the defendants Hiram F. Higgins and Ida M. Durand a quitclaim deed conveying all of the property described in finding No. 2 to Hiram Higgins; that Hiram F. Higgins and Ida M. Durand signed such deed, but that the plaintiff, Kelley S. E. Higgins, refused to execute the same; and said Hiram Higgins prayed that the plaintiff, Kelley S. E. Higgins, be required to execute and deliver to the defendant Hiram Higgins a deed to all of the property described in finding No. 2.

"On May 10, 1893, the plaintiff, Kelley S. E. Higgins, filed a reply to the answer and cross-petition of the defendant Hiram Higgins, denying generally the allegations and averments therein contained, which were inconsistent with his right to recover, and denying that said deed was executed for love and affection and that it was a conveyance in trust, and denied that the contract heretofore mentioned was cotemporaneous with the making of said deed, and that prior to the commencement of said suit the power of attorney heretofore mentioned was revoked as to the plaintiff. Said reply was duly verified.

"Afterwards, and on December 20, 1893, a jury being waived, said case was tried before the court, in said circuit court of Shawnee county, and the court made special findings of fact in substance as follows:

"'That on June 11, 1888, and for years prior thereto, the defendant Hiram Higgins was the owner of and in possession of all the real estate then in controversy; that on June 11, 1888, Hiram Higgins executed and delivered to Hiram F. Higgins, William I. Higgins, Kelley S. E. Higgins and Ida M. Durand a deed for all of the real estate then in controversy;

that at the same time, and as part of the same transaction, Hiram F. Higgins, Kelley S. E. Higgins, William I. Higgins and Ida M. Durand entered into a written contract referred to in finding No. 2 above; that on February 5, 1889, Hiram F. Higgins, Kelley S. E. Higgins, William I. Higgins and Ida M. Durand executed a power of attorney to Hiram Higgins, as mentioned in finding No. 3 above; that on November 15, 1892, Kelley S. E. Higgins executed a revocation of said power of attorney; that since the execution of said deed, power of attorney, and contract, Hiram Higgins was and has been in the possession of all of the property then in controversy except the southeast quarter of section 11, township 12, range 15, in Shawnee county; that Hiram Higgins is the father of Kelley S. E. Higgins, Hiram F. Higgins, Ida M. Durand, and William I. Higgins, deceased; that Mary Higgins, the wife of Hiram Higgins, is now living and residing with her husband on the east sixty acres of the northeast quarter of section 11, township 12, range 15; that since and long prior to the execution of said deed, and during all the time since the execution thereof, Hiram Higgins is and was in the possession of said quarter-section, living upon the same with his wife and such of the children as are unmarried, and occupying the same as a homestead; that there was no consideration whatever passing from Kelley S. E. Higgins, Hiram F. Higgins, William I. Higgins and Ida M. Durand for said conveyance of June 15, 1887, but the same was made in consideration of love and affection from said Hiram Higgins to his said children; that Kelley S. E. Higgins signed the said written contract above described, and dated on the 15th day of June, 1887, and that the signature thereto is his genuine signature; that prior to the institution of that suit William I. Higgins departed this life intestate, without issue, leaving surviving him, as his only heirs, Hiram Higgins and Mary Higgins, his parents; that prior to the institution of said suit Hiram Higgins asked and demanded of Kelley S. E. Higgins

that he execute to him a conveyance of the property in controversy. And the court then found as a conclusion of law, in substance, that the plaintiff, Kelley S. E. Higgins, was entitled to no relief; that defendant Hiram Higgins is entitled to a conveyance of said real estate in controversy. Upon said findings the court rendered judgment that the plaintiff, Kelley S. E. Higgins, take nothing by reason of the matters and things contained in his petition; that the defendant Hiram Higgins have and recover from the plaintiff the costs of the action, and that plaintiff, Kelley S. E. Higgins, within thirty days from the date thereof, should convey to Hiram Higgins, by deed of general warranty, his interest in the premises described in said petition. That the deed executed by Hiram Higgins to Hiram F. Higgins, Kelley S. E. Higgins, William I. Higgins, and Ida M. Durand, of date of June 15, 1887, acknowledged June 11, 1888, be and the same is hereby set aside, vacated, and declared wholly null and void and of no effect, that the title to said premises be and the same is forever quieted in the defendant Hiram Higgins, free and clear from any and all claims, interest, estate, property, right, title or interest of said Kelley S. E. Higgins in or to the same.'

''The judgment rendered by said circuit court, as above set forth, now stands unreversed.

''9. On the —— day of November, 1893, said circuit court of Shawnee county, Kansas, called and commenced to hold a special term of said court. The call therefor and all proceedings connected with the call of said special term were substantially in accordance with the provisions of law concerning the calling of special terms of district courts in the state of Kansas. Said special term commenced on the —— day of November, 1893, and continued until the 27th day of December, 1893, at which time it was adjourned. On the 20th day of December, 1893, said circuit court tried and heard the case of Kelley S. E. Higgins against Hiram F. Higgins and others, mentioned and described in these findings, and as a result thereof

certain findings of fact and conclusions of law were made and entered and judgment rendered as set forth in finding No. 8, above.   But neither in said pleadings, the findings made by the court nor in the judgment rendered was any issue joined or judgment rendered against Hiram F. Higgins and Ida M. Durand.   The only issues joined by the pleadings in said action were between Kelley E. S. Higgins, as plaintiff, and Hiram Higgins, as defendant.

"10.   After the rendition of said judgment in said circuit court, as set out in finding No. 8, an attempt was made to take said case to the court of appeals by said Kelley S. E. Higgins, but the case was dismissed for the reason that the case-made had not been served upon Hiram Higgins or his attorney of record.

"11.   On November 15, 1892, Kelley S. E. Higgins duly executed and acknowledged a revocation of said power of attorney described in finding No. 3, which said revocation was filed for record in the office of the register of deeds of said Shawnee county and duly recorded on the 15th day of November, 1892. And on January 11, 1899, Hiram F. Higgins and Ida M. Durand executed and acknowledged a revocation of said power of attorney from them to Hiram Higgins, and the same was duly filed for record and recorded in the office of the register of deeds of Shawnee county on January 12, 1899.

"12.   On January 11, 1899, Kelley S. E. Higgins and his wife, Emma Higgins, and Ida M. Durand and George W. Durand, her husband, and Hiram F. Higgins, unmarried, for a valuable consideration, executed to J. B. Larimer a deed of general warranty for an undivided thirteen forty-eighths interest in and to all of the real estate described in finding No. 2, which deed was filed for record in the office of the register of deeds of Shawnee county and duly recorded on the 12th day of January, 1899.   At the time said deed was executed and delivered to said Larimer, he had full knowledge concerning all of the matters of record pertaining to the title to said real estate and was not an innocent purchaser.

"13. Hiram Higgins was married to the plaintiff in this case, Anna M. Higgins, in October, 1895, and at the time of said marriage Hiram Higgins was about seventy-nine years of age, and the plaintiff at the time of said marriage was a widow, having two children by a former husband, who were then about forty years of age.

"14. The plaintiff and her husband, Hiram Higgins, live upon a part of the real estate described in finding No. 1, and one of the plaintiff's children by her former husband resides with them.

"15. On January 14, 1899, without any other consideration than love and affection, Hiram Higgins executed and delivered to the plaintiff, Anna M. Higgins, a general warranty deed for the northeast quarter of section 11, township 12, range 15, and all of the southeast quarter of said section lying north of the center of Shunganunga creek; also lots 14, 16 and 18 on Polk street in the city of Topeka, and lot No. 234 on Kansas avenue in the city of Topeka, which said deed was filed for record and duly recorded in the office of the register of deeds January 16, 1899.

"At the time of the making of said conveyance of grantee therein, Anna M. Higgins had full knowledge of all the matters concerning the title to said real estate and was not an innocent purchaser.

"16. On the 6th day of December, 1900, Hiram Higgins executed to the plaintiff, Anna M. Higgins, a general warranty deed for all that part of the southeast quarter of section 11, township 12, range 15, lying south of the Shunganunga creek, which deed was executed without any consideration therefor except love and affection. Said deed was duly filed for record and recorded in the office of the register of deeds of Shawnee county, Kansas, on the 18th day of December, 1900.

"17. The quitclaim deed offered in evidence in this case and purporting to have been executed by Hiram F. Higgins and Ida M. Durand for the property described in finding No. 2, to Hiram Higgins, which professed deed was not acknowledged, was never exe-

cuted and delivered by Hiram F. Higgins and Ida M. Durand, the persons whose names appear signed thereto.

"18. Long prior to, at the time and after the execution of the deed mentioned and described in finding No. 2, and up to the time of the death of said Mary Higgins, Hiram Higgins and Mary Higgins, his wife, occupied the northeast quarter of section 11, township 12, range 15, as their homestead, all of the buildings and homestead improvements being upon the east sixty acres of said tract of land. And after the death of said Mary Higgins said Hiram Higgins continued to occupy said land as his homestead until his marriage to the plaintiff, Anna M. Higgins, and since said marriage the plaintiff and said Hiram Higgins have occupied said land as their homestead and now reside upon and occupy the same.

"19. Prior to the execution of the deed described in finding No. 2, some conversation took place between said Hiram Higgins and Mary Higgins, his wife, in relation thereto, and Mary Higgins expressed herself as willing to join in the execution of said deed, but said Hiram Higgins stated that it was not necessary that she should sign the same. When said deed was made and delivered, Mary Higgins did not join in its execution, but she afterwards expressed herself as being satisfied with it.

"20. The real estate described in these findings of fact was largely the joint accumulation of Hiram Higgins and Mary Higgins, during their married life, but during said period of time Mary Higgins received certain money from her father's estate, the amount of which the court is unable to find, but whatever amount was so received by her, the same was used by Hiram Higgins in the purchase of and assisting in the accumulation of the property described in these findings."

"CONCLUSIONS OF LAW.

"1. That the deed mentioned and described in finding No. 2, as the northeast quarter of section 11, township 12, range 15, which was the homestead of

Hiram Higgins and Mary Higgins, his wife, is void for the reason that Mary Higgins did not join therein or consent to the conveyance in such a way as to make the deed a valid transfer of the property.

"2. That the special term of the circuit court of Shawnee county, mentioned and described in finding No. 10, was legally held; that the judgment referred to in finding No. 8 in the case of Kelley S. E. Higgins *v.* Hiram Higgins, Hiram F. Higgins, and Ida M. Durand, was a valid judgment and is *res judicata* as to Kelley S. E. Higgins, with reference to the property described in finding No. 2, which was the same property that was in controvery in said case in the circuit court.

"3. That plaintiff is the owner of the property described in finding No. 1, and is entitled to have her title quieted as to all of the defendants."

The deed mentioned in finding No. 2 was of the ordinary form, with full covenants of warranty and seisin, conveying to the grantees an absolute estate in fee simple to all of the property in controversy except the east sixty acres of the northeast quarter of section 11. The agreement mentioned in finding No. 2 is as follows:

"AGREEMENT.

"This agreement, made this 15th day of June, A. D. 1887, between Hiram Higgins, of the first part, and Hiram F. Higgins, Kelley S. E. Higgins, William I. Higgins, and Ida M. Durand, of the second part:

"Witnesseth, that in consideration of a deed made this 15th day of June, 1887, by parties of the first part, conveying certain lands and city lots, that we each and all agree that we will not sell or dispose of in any manner any part of said lands described in said deed during my lifetime without my written consent, and that the whole described property shall be under my control and direction and mine as long as I live, with right to sell and convey the whole or any part thereof the same as though a deed had never been

given.   And we further agree that we will sign all deeds when requested to do so, conveying the said lands or any part thereof; that we will give Hiram Higgins, party of the first part, a written power of attorney to sell and convey all or any part of said lands and to do all business he may deem proper in the premises.

"In witness whereof, the parties of the second part set their hands, this 29th day of May, 1888.

(Signed)   HIRAM F. HIGGINS.

K. S. E. HIGGINS.

WILLIAM I. HIGGINS.

IDA M. DURAND.

The judgment of the court upon these findings was that the plaintiff's title should be quieted to the real estate in controversy, and she was adjudged its owner in fee simple and freed from any claims of the defendants.   To reverse this judgment defendants prosecute this proceeding.

*James J. Hitt*, and *Garver & Larimer*, for plaintiffs in error.

*Jetmore & Jetmore*, for defendants in error.

The opinion of the court was delivered by

CUNNINGHAM, J.: The first question with which we are confronted relates to the nature of the transaction evidenced by the deed of Hiram Higgins to his children, dated June 15, 1887, but executed and delivered June 11, 1888, and the accompanying agreement given back by the children to him.   It is insisted by Mrs. Higgins that, taken together, these papers are but executory and in the nature of a will, and, being testamentary in their character, were subject to be revoked by Hiram Higgins at any time prior to his death, and that the conveyance of the lands

mentioned therein to Mrs. Higgins operated to revoke and annul the provisions of the deed. In support of this claim, we are cited to the following decisions of this court: *Reed, Ex'r, v. Hazleton*, 37 Kan. 321, 325, 15 Pac. 180; *Hazleton v. Reed*, 46 id. 73, 26 Pac. 450; *Lacy v. Comstock*, 55 id. 86, 39 Pac. 1024; *Powers v. Scharling*, 64 id. 339, 67 Pac. 820.

It is claimed that the case of *Lacy v. Comstock*, supra, is decisive of the case at bar. It is true that a suggestion was therein made that the conveyance there considered was testamentary in character, and this although words were used in it probably sufficient to carry with them full covenants of warranty accompanied with a reservation of a life-estate, yet we think the case fairly distinguishable from this. However this may be, the case was not decided upon that question, and hence is not authority here.

In the case of *Reed v. Hazleton*, supra, at page 325, this language was used:

"If an instrument of writing passes a present interest in real estate, although the right to its possession and enjoyment may not accrue until some future time, it is a deed or contract; but if the instrument does not pass an interest or right until the death of the maker, it is a will or testamentary paper."

This principle is the governing one in all of the other cited cases and determinative of this question in the case at bar. In the case of *Love v. Blauw*, 61 Kan. 496, 59 Pac. 1059, 48 L. R. A. 257, 78 Am. St. Rep. 334, the limitation upon the title contained in the deed was as follows: "The estate in said lands and tenements not to vest in said named grantees and their heirs until the death of said Catherine Blauw, she reserving in herself a life-estate therein." This, however, was held not to operate so as to make the conveyance a

testamentary one.   The rule laid down in *Powers v. Scharling,* supra, at page 343, for the solution of this question is as follows :

" In determining whether an instrument be a deed or a will, the question is, Did the maker intend to convey any estate or interest whatever to vest before his death and upon the execution of the paper ?   Or. on the other hand, did he intend that all the interest and estate should take effect only after his death ?   If the former, it is a deed ; if the latter, a will."

Now, in the case at bar, after the execution of the deed by Hiram Higgins, which conveyed on its face an absolute fee-simple title, he took back the agreement which contained the provision that the grantees were not to sell or dispose of any part of the real estate in any manner during the lifetime of Hiram Higgins without his written consent, and that it should always be his so long as he lived, with the right to convey the same as though a deed had never been given, and at another place in the same agreement the deed is referred to as conveying title to the grantees, and the agreement is that the grantees would execute deeds reconveying the title upon the request of their father. All this leads us to the conclusion that by the entire transaction the grantor intended to convey to the grantees a present interest.   We shall soon pass to a discussion of the potency of the repugnant clauses in the agreement.   Suffice it to say that, reading this agreement into the deed, the result amounts to nothing more than a conveyance in fee simple to the grantees, with a limitation that the title thus conveyed *in præsenti* goes encumbered with a life-estate in the grantor, Hiram Higgins.   (*Wilson v. Carrico*, 140 Ind. 533, 40 N. E. 50, 49 Am. St. Rep. 213, and note ; 2 Devl. Deeds, 2d ed., § 855a, *et seq.*)

Thus far we have discussed the question as though the conditions of the agreement had full force and effect, and might be availed of to contradict and render inoperative any of the provisions found in the deed with which they might conflict. We do not, however, think this assumption is warranted, but hold rather that if any of the conditions of the agreement would operate, if given force, to nullify the grant of the deed, they must be disregarded. At the very best, the agreement must be read into the habendum rather than into the premises of the conveyance—must come after the grant rather than go before it. It is a well-established rule in the case of deeds that the first of the repugnant clauses must prevail. If there be a repugnancy between the premises and the habendum, the former must prevail. Thus the habendum may lessen, enlarge, explain, or qualify, but not totally contradict, or be repugnant to, the estate granted in the premises. (9 A. & E. Encycl. of L., 2d ed., 140.) This is hornbook law, and many cases might be cited in its support; but see *Ruggles v. Clare*, 45 Kan. 662, 26 Pac. 25; *Bassett v. Budlong*, 77 Mich. 338, 43 N. W. 984, 18 Am. St. Rep. 404; *Robinson v. Payne*, 58 Miss. 690; *Berridge and wife v. Glassey*, 112 Pa. St. 442, 3 Atl. 583, 56 Am. Rep. 322, and note; *Owston v. Williams et al.*, 16 U. C. Q. B. 405; *Langlois v. Lesperance*, 22 Ont. 682; 1 Tiff. Mod. Law of Real Prop. 171, §70; Gray, Restr. on Alien. of Prop. §§19, 22; Cool. Bla. Com., 2d bk., ch. 20.

So that, if we conclude that by this clause in the agreement, "with right to sell and convey the whole or any part thereof the same as though the deed had never been given," it was intended by the parties to give to Hiram Higgins, notwithstanding his absolute deed of conveyance, the right to control and convey

the same as though no such deed had ever been given, yet, in the light of this principle and these authorities, we would be bound to disregard that clause and hold that it did not serve to defeat the conveyance of the fee.

Further, in the construction of conveyances, as well as of other contracts, where there is an ambiguity, we may take into consideration the surroundings and purposes of the parties.    It is shown in finding No. 4 that the object in executing the deed was to put the title out of Hiram Higgins in order to defraud a creditor.    This being the purpose, and the language being sufficient to effectuate it, we hold that, construing the deed and agreement together, the result was to transfer the fee-simple title in all of the property, with an exception which we will hereafter note, to the grantees named therein, retaining, however, in Hiram Higgins a life-estate.

At the time of the execution of this conveyance the northeast quarter was the homestead of Hiram Higgins, and occupied by himself and wife, and as such could not be alienated without the joint consent of the husband and wife.    The deed itself, as will be noted, was signed only by Hiram Higgins.    Finding No. 19 shows that the wife, prior to the execution of the deed, expressed herself as willing to join in its execution, but did not because it was stated that it was not necessary that she should do so, and after its execution and delivery she expressed herself as being satisfied with it.    Does this finding show a joint consent, as required by the constitution ?    This court has held, in *Pilcher v. A. T. & S. F. Rld. Co.*, 38 Kan. 516, 16 Pac. 945, 5 Am. St. Rep. 770 ; *Dudley v. Shaw*, 44 id. 683, 24 Pac. 1114, and *Matney v. Linn*, 59 id. 613, 54 Pac. 668, that the joint consent required need not neces-

sarily be expressed in writing, to satisfy the constitutional requirement. But while this is so, the consent must be a joint one. The husband and wife must at the time the conveyance takes effect both consent thereto. They must both give consent at the same time. The nineteenth finding of fact does not show the existence of this joint consent. It merely shows that prior to the execution of the deed the wife expressed herself as willing to join in the execution of the deed, and that after execution and delivery she expressed herself as being satisfied with it. This lacks much of finding that at the time of the delivery, that being the only time the husband is shown to have consented, the wife was so consenting. This being so, as to the homestead the deed was ineffectual to convey.

It is contended by the plaintiff in error Kelley S. E. Higgins that the judgment rendered by the circuit court of Shawnee county, decreeing that he have no interest in the premises in controversy, as stated in finding No. 8, was void for the reason that the same was rendered at a special term of that court; that as the statute creating that court did not give it authority to convene a special term, it was therefore without authority to sit, and had no authority, so sitting, to render the judgment. The act creating the circuit court of Shawnee county is chapter 83 of the Laws of 1891. It does not expressly give that court authority to call a special term thereof, but in section 3 it does provide that for the purpose of the jurisdiction conferred upon it all of the laws of this state relating to the powers and jurisdiction of district courts shall apply to said circuit court, and, as the district court is authorized under the statute to call a special term, we think the language of the act broad enough to confer the same power upon the circuit court. Therefore

the judgment against Kelley S. E. Higgins, remaining unreversed, is *res judicata* as to him, and bars him from any interest he might have had.

The court found in finding No. 4 that the conveyance was executed by Hiram Higgins for the purpose of defrauding a creditor. This being so, the court may not afford him, or any one standing in his shoes, relief therefrom, and, as it is found further, in finding No. 15, that the deed under which the plaintiff claims was executed without other consideration than love and affection, and that at the time she had full knowledge of all the rights of the plaintiffs in error, she takes only such rights as her husband, Hiram Higgins, had, and hence she may not have her title quieted to any of the real estate except as to the homestead, for as to this, it not being liable for his debts, he might lawfully convey it, no matter how fraudulent his purpose.

The power of attorney mentioned in finding No. 3 and the quitclaim deed mentioned in No. 17 serve no purpose in the case.

It follows from what has been said that by the deed of June 11, 1888, Hiram Higgins conveyed to the grantees therein a fee-simple title in and to all of the real estate mentioned, except the northeast quarter of section 11, subject to a life-estate in said Hiram Higgins; that by his deed of January 14, 1899, the defendant in error, Anna M. Higgins, took full title to the northeast quarter of section 11, and the life-estate held by her husband in the other property therein described; that Kelley S. E. Higgins has no title whatever to any of the real estate in controversy. The shares to which the other plaintiffs in error may be entitled, under the facts of the case, have not been

considered in this opinion, but are easily determinable.

.Defendant in error challenged by a cross-petition in error the action of the court in taxing the costs of the case to her. This cross-petition, however, was not filed in this court until more than one year after the rendition of the judgment complained of, and hence we have no jurisdiction to entertain the same.

Because of the error of the district court in holding that the plaintiffs in error took no title whatever by the deed of June 11, 1888, this case will be reversed, and remanded for further proceedings in accordance with this opinion.

All the Justices concurring.