CHARLES L. ADAMS v. JOHN O. GILBERT *et al.*

No. 13,191.   ( 72 Pac. 769.)

SYLLABUS BY THE COURT.

1. CONVEYANCE—*Insane Wife—Homestead.* A deed to a homestead made by a husband and the guardian of his insane wife is ineffectual as a muniment of title, and conveys nothing so long as the property remains a homestead.

2. ———— *Ratification of Void Deed—Husband Estopped.* A deed to a homestead, ineffectual at the time of its execution to convey title because not joined in by the wife, may become effectual for that purpose after the death of the wife by being recognized and adopted by the husband, or he may estop himself by his acts and conduct from claiming that such deed does not convey title.

Error from Sedgwick district court; D. M. DALE, judge.   Opinion filed June 6, 1903.   Affirmed.

STATEMENT.

THIS was the action of Adams in ejectment for a residence property in the city of Wichita. It had been occupied by himself and family as their homestead prior to October 20, 1893. His wife had been adjudged insane and was confined in an asylum. On that date he conveyed, by warranty deed, to one Foster, who was his friend, the conveyance being made for the purpose of putting the property beyond the reach of his creditors, he not knowing that the same was exempt. He, however, continued to occupy the premises with his children as a home up to the time hereinafter mentioned. This deed was executed by Adams and Harvey Burson, as guardian of the estate of his insane wife, who is described in the deed as an insane person. The property was at the time worth about $800. Foster paid no consideration, but on the

same day executed to one Davis, a brother-in-law of Adams, a mortgage securing a note for $2000. This was delivered to Adams, Davis having no interest in it. Subsequently it was assigned as security to one from whom Adams had borrowed $700. On October 29, 1894, Foster conveyed the property in question by warranty deed to Kelley. No consideration passed for this conveyance.

On November 8, 1894, Kelley conveyed to one Doran, who paid off the Adams $700 note and procured a discharge of the $2000 mortgage. Whether greater consideration was paid by Doran is not shown. Thereupon Adams abandoned the property as a homestead, his wife still being insane, and has never since occupied it. Doran entered into its possession and expended for improvements some $2000. On March 4, 1898, Doran conveyed to Gilbert, the defendant in error, by a deed which purports to convey only Doran's interest. Gilbert took possession and expended $275 in permanent improvements. Since the execution of the deed by Adams to Foster, Adams has paid no taxes on the property. At the time of the execution of the deed to Foster, Adams supposed that by the joining of the guardian of his insane wife therein a good title was conveyed, but he testified that he had been informed otherwise, or had at least talked with a lawyer about bringing suit in ejectment some two or three years before November 15, 1900. Mrs. Adams died about January 1, 1899. This action was brought September 20, 1899. Upon these facts the court found against the plaintiff, that he had no interest in or title to the property in question, and adjudged that he pay the costs of the proceeding. To reverse this judgment he prosecutes this proceeding in error.

*Thornton W. Sargent,* for plaintiff in error.

*Thomas B. Wall,* and *James V. Daugherty,* for defendants in error.

The opinion of the court was delivered by

CUNNINGHAM, J.: The deed to Foster was ineffectual at the time of its execution as a muniment of title, the property conveyed then being the home-stead, and the deed not having received the joint consent of husband and wife. While the marriage relationship continued and the property was occupied as a homestead, no act of the husband could be efficient to ratify or confirm such deed. The husband might by his actions, words, or silence, when he should have spoken, confirm a deed to the homestead executed by himself alone, or estop himself from denying its validity, so as to make it convey title, after its homestead character had ceased, or after the death of the wife.

The principle of equitable estoppel may be invoked to defeat the operation of the homestead law. (*McAlpine v. Powell,* 44 Kan. 411, 24 Pac. 353; *Sellers v. Crossan,* 52 id. 570, 35 Pac. 205; *Sellers v. Gay,* 53 id. 354, 36 Pac. 744.) The protection to a homestead afforded by constitutional and statutory provisions lasts no longer than the occupancy of the premises as a homestead.

In this case it was shown that Adams abandoned the property in question with his family as early as 1895. It may be his deed executed at or after that time would have conveyed the same, subject, of course, to whatever inchoate interests the wife might have had had she survived him. Why might not a deed which had been executed by him prior to that time have

taken effect after the death of his wife, and become as effective as one then executed by him, if he had intended it should do so, or if by his acts he was estopped to deny that he so intended? He surrendered possession to the one holding under a deed which he had executed. This was because he had executed such deed, and to confirm the same. Having executed the deed which, had he continued to occupy his premises as a homestead, would have conveyed nothing, he did more—he abandoned the homestead, surrendered the premises, put the grantee into possession, gave effect to a deed which while the premises remained a homestead had no effect, but when they ceased to be a homestead might and did operate. He thereby made efficient what was theretofore inefficient. (*Hall et al.* v. *Fullerton,* 69 Ill. 448; Thomp. Home. & Exemp. § 483.) That he did not then know that his deed to Foster was at the time of its execution ineffectual to convey title made no difference. Doran, the then purchaser, and in fact the first real and *bona fide* purchaser, had a right to suppose that Adams, knowing the invalidity of the Foster deed, was willing to give it force, so far as he could, by removing the obstacle thereto, to wit, its homestead character. Adams not only put Doran into possession, but he received at least part of the purchase-price in the payment of his $700 note, and then stood by while the purchaser expended large sums of money in making permanent improvements and paying taxes.

Again, Adams said while testifying, on November 15, 1900, in answer to the question: "This suit was not instituted until September last; when did you first commence to make claim to it? (Referring to the property in question.) Ans. I have been talking to Mr. Sargent (his attorney) about bringing suit for

two or three years.'' That is, he had known for some length of time before Gilbert purchased the property, on March 4, 1898, the infirmity of his deed to Foster. Notwithstanding this knowledge he remained silent and gave no warning to Gilbert, but permitted him not only to purchase, but to go on expending money in the payment of taxes and in making improvements thereon. During all this time he asserted no claim to the property.

It seems to us that these facts embrace all the necessary elements of equitable estoppel. Admit that Adams, because of his ignorance of the invalidity of the Foster deed, was not estopped as against Doran, and that the title came to Gilbert as Doran had it, still, with the knowledge which he had as above indicated, he is now estopped, as Gilbert, in view of Adams's silence, had a right to presume that he was intending and expecting to confirm and make effective his invalid deed. In any event, after the death of the wife, the homestead character of the property ceased. At that time Adams was as fully informed as to the facts and the law as he was when, this action was brought. He certainly might, even by his silence and inactivity, in time confirm and make efficient his former deed. We are not in a position to say the delay of about nine months was not sufficient for that purpose. At least Adams is now estopped from asserting that he did not intend so to confirm and ratify it.

It would be gross injustice to permit Adams by his belated action to recover the property with all of these improvements and its enhanced value after he had received what appears to have been a fair value at the time of the execution of his deed, and after he had stood quietly by with knowledge of his rights, which he himself shows he had, permitting the expenditure

by Gilbert of money in the purchase-price, improvements, and taxes. This equity will not permit.

Under all of the circumstances of the case, we are fully persuaded that the judgment of the court below was correct. It will be affirmed.

All the Justices concurring.