JOHN J. SHAY v. THE BEVIS ROCK SALT COMPANY.

No. 14,278.    (83 Pac. 202.)

SYLLABUS BY THE COURT.

HOMESTEADS—*Lease by the Husband—Abandonment—Estoppel.*
A lease giving the right to mine and take salt from a tract
of land occupied as a homestead was executed by the owner,
but his wife did not join in its execution, and when informed
of it questioned his right to lease the land without her con-
sent. No protest or objection, however, was made to the
lessee, although a large amount of money was expended in
making improvements and in operating the mine under the
lease. She was frequently at and near the mine and in con-
tact with those operating it, and knew that much money was
being invested to carry on the work in pursuance of the
lease. Later she and her husband abandoned the homestead,
after which, for a number of years, the lessee continued to
operate the mine and to make substantial improvements,
with the knowledge of both the lessor and his wife; but

neither objected nor questioned the validity of the lease, and the attitude of both was that of assent and acquiescence in its validity. *Held,* that they and their grantee, who had notice of the transactions, are equitably estopped to assert that the lease is invalid.

Error from Rice district court; JERMAIN W. BRINCKERHOFF, judge. Opinion filed November 11, 1905. Affirmed.

*C. F. Foley,* and *John D. Milliken,* for plaintiff in error.

*Samuel Jones,* for defendant in error.

The opinion of the court was delivered by

JOHNSTON, C. J.: The point in dispute herein is the validity of a lease executed on December 11, 1889, by David Ahlberg to the Lyons Rock Salt Company, giving the exclusive right to take salt from a tract of land that constituted a rural homestead. Mrs. Ahlberg, who occupied the land with her husband, did not sign the lease; and when told of it, about the time of its execution, remarked that it was wrong to sign things without her consent. The salt company acquired the right to mine salt under adjoining lands, and in May, 1890, began operations by sinking a shaft within 200 feet of the Ahlberg land to a depth of more than 1000 feet. Buildings were erected and machinery and mining appliances installed which cost $130,000, but none of them was placed on the Ahlberg land, nor was the surface in any way occupied or disturbed by the salt company. The plant was installed and the shipping of salt begun in 1891, and, the money for the plant having been furnished by Bevis, the property was ultimately transferred to the Bevis Rock Salt Company.

During the sinking of the shaft and the erection of the buildings and other improvements Mrs. Ahlberg was frequently at and near the plant, observed the

14—72 KAN.

purposes and progress of the operations, and knew that the expenditures were made for the mining of the salt under the homestead and in pursuance of the contract with her husband. Except the remark made when she first learned of the lease, she never remonstrated or complained to any one connected with the operation of the mine, although some of the workmen boarded at her house. She did not even suggest to her husband that the work should be stopped because she had not signed the lease or given her consent to it.

In the spring of 1893 the Ahlbergs removed from the homestead and established a residence in the city of Lyons, where they remained until the fall of 1895; and during their residence in the city Ahlberg exercised the privileges of an elector there, and otherwise manifested an intentional change of residence and an abandonment of the rural homestead. They returned to the farm in the fall of 1895, and lived there until 1902, when they moved back to the city; and they were not occupying the farm when it was sold to the plaintiff, John J. Shay. After the abandonment of the homestead by the Ahlbergs the salt company continued to operate the mine and expended $25,000 additional in improvements, and the company was in the possession of, and actively operating, the mine when Shay acquired the land.

One of the defenses of the salt company was that the Ahlbergs and their grantees were estopped from asserting that the lease was invalid, or that the mining rights had not been effectually transferred to the salt company, and this defense the court sustained. It is conceded that the lease was not signed by Mrs. Ahlberg, and that her consent was not given when the lease was executed; and plaintiff insists that it was void when it was made and that the conveyance to him gave him everything on the surface and under it. The defendant contends that, as the surface of the land was not disturbed, nor its occupation as a homestead impaired, the joint consent of the wife was not

essential to its validity.  We find it unnecessary to determine that question, but, assuming that the lease carried such an interest in the homestead, as required the joint consent of husband and wife, the court correctly applied the doctrine of equitable estoppel as against the claim of Shay.  Assuming that consent was necessary, it was not essential that it should be in writing; and as she could have given an oral consent, the lease was not necessarily bad on its face.  (*Pilcher v. A. T. & S. F. Rld. Co.*, 38 Kan. 516, 16 Pac. 945, 5 Am. St. Rep. 770; *Dudley v. Shaw*, 44 Kan. 683, 24 Pac. 1124; *Durand v. Higgins*, 67 Kan. 110, 72 Pac. 567.)

The salt company proceeded on the theory that the lease was valid, and made a large outlay in the belief that the Ahlberg lease, as well as others likewise executed, gave it mining rights under the lands.  Mrs. Ahlberg knew of the existence of the lease; that it purported to give the right to mine for salt under her husband's land; and that a large amount of money was being invested for the purpose of mining salt under the land in pursuance of the lease.  She lived within a short distance of the mine and in view of the work, visited and passed the plant, and was in contact with those engaged in the work; but she and her husband remained silent as to any defect in the lease, and allowed the salt company to believe that both were assenting to the lease and were recognizing the rights which the lease undertook to transfer.  They did not protest or speak when they should have spoken, and neither they nor their grantee should now be heard to speak or complain.

It has already been determined that equitable estoppel may be invoked to defeat the operation of the homestead law, and parties may by their conduct and acquiescence be estopped from asserting that a transfer, insufficient in the first instance, is not finally sufficient and valid.  The doctrine was applied in *McAlpine v. Powell*, 44 Kan. 411, 24 Pac. 353, where an owner of land occupied as a homestead undertook to

Shay v. Bevis.

convey it in exchange for another home, and it was finally claimed that the deed of conveyance was invalid because the wife did not in fact sign it. She, however, knew of the exchange, acted in accordance with the terms of exchange, expressed satisfaction with it, and occupied and enjoyed the benefits of the land received in exchange; and it was held that she was equitably estopped from claiming the homestead.

In *Sellers v. Crossan*, 52 Kan. 570, 35 Pac. 205, an owner of a homestead and her husband executed a deed purporting to convey a complete title. They subsequently made the claim that the deed was in fact a mortgage, given to secure the payment of borrowed money. Their grantee, however, executed a mortgage on the tract, and, as those claiming the homestead and who still held the possession of the land had not signed that mortgage, it was claimed that it was ineffectual. It was shown that after they had executed the deed they had disavowed ownership of the land and had acted so as to induce the belief that they had neither title nor homestead interest in it, and it was held that they were estopped to claim any. The case of *Sellers v. Gay*, 53 Kan. 354, 36 Pac. 744, was based largely on the facts of the last-cited case, and the same rule of estoppel was applied as against a claim of homestead.

In *Adams v. Gilbert*, 67 Kan. 273, 72 Pac. 769, 100 Am. St. Rep. 456, the principle of equitable estoppel was again invoked and applied. There a husband having an insane wife signed a deed to a homestead. Later he surrendered the possession to one holding under his deed and put the grantee in possession. Extensive improvements were made and much money expended by the grantee with the full knowledge of the grantor; and it was held that these facts embraced all the necessary elements of equitable estoppel, and the court denied the claim of the grantor to the property. (See, also, *Johnson v. Samuelson*, 69 Kan. 263, 76 Pac. 867; *Spafford v. Warren*, 47 Iowa, 47; *Brown v. Coon*, 36 Ill. 243, 85 Am. Dec. 402.)

In this case, as in *Adams v. Gilbert,* 67 Kan. 273, there was an abandonment of the homestead. If we put aside the elements of estoppel which existed prior to the abandonment, that which occurred subsequently was certainly sufficient to estop both of the Ahlbergs. Although Ahlberg owned the property for nine years after surrendering the homestead right in the land, the attitude of himself and his wife was that of assent to the right claimed under the lease, and it was such as to induce the belief of the salt company that the mining right was unquestioned and valid. During that time the mine was operated, improvements made and a large amount of money invested by the salt company. Each of them knew of these operations and expenditures, and each knew that they were carried on and made in pursuance of the lease and on the faith of a valid transfer, but neither protested nor raised a single objection. Both had complete information, both acquiesced in the possession and claim of right by the salt company, both acted as if a good transfer had been made, and it would be inequitable now to allow them to repudiate their recognition and to assert that the transfer was invalid. It would operate as a fraud on the salt company to permit them to deny what they had led that company to believe, and upon which it had acted.

Shay is in no better position than his grantors. The lease was on record, and the lessees were in the open possession of the mine. By inquiry he would have learned all the circumstances, including those which showed that the company had acquired a mining right in the land—one which was as binding upon him as it had been upon the Ahlbergs.

There is nothing substantial in the objections to the admission of testimony, nor in the claim that the findings of the court were not supported by the evidence. The judgment is affirmed.

All the Justices concurring.